### THIRD NAT. BANK OF PHILADELPHIA v. NATIONAL BANK OF CHESTER VALLEY.

(Circuit Court of Appeals, Fifth Circuit.    April 12, 1898.)

#### No. 649.

1. SPECIAL MASTER—REFUSING TO ADJOURN.

    It is not an abuse of discretion for a special master to refuse an adjournment for the purpose of permitting a party to have executed and returned certain interrogatories, when the cause has been adjourned several times since the close of the evidence, and no such application has then been made.

2. SAME—COURT HEARING ADDITIONAL TESTIMONY.

    It is not error for the court, in considering a special master's report, to refuse to consider certain depositions that had not been used before the master.

3. SAME—FINDINGS.

    Where a rule is entered, on the consent of all the parties, referring a cause to a special master to hear and report the facts and the law involved in the whole case, his findings will not be disturbed unless clearly in conflict with the weight of evidence.

4. APPEAL—POINT NOT MENTIONED IN ASSIGNMENT OF ERRORS.

    The court will not consider on appeal a question not raised before the lower court, and not mentioned in the assignment of errors.

Appeal from the Circuit Court of the United States for the Northern District of Georgia.

Theodore F. Jenkins and H. B. Tompkins, for appellant.

Wm. D. Ellis and J. R. Gray, for appellee.

Before PARDEE, and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

McCORMICK, Circuit Judge.    Some time before January 1, 1891, Samuel W. Groome sold to the Marietta & North Georgia Railway Company a lot of rolling stock, making a contract in his own name, in which he reserved title to the property to secure unpaid balances, which unpaid balances were evidenced by promissory notes. This contract and the notes went into the hands of appellant, which was then put on notice that Samuel W. Groome had bargained and sold the property to the railway company as his own. After the appointment of James B. Glover as receiver, in January, 1891, Groome filed an intervention, claiming title to the property, and asked that it be delivered to him, or that the receiver purchase it from him. Appellant had notice of this proceeding, and, among other acts, delivered to Groome the contract and notes, in order that he might establish his claim. It is shown that it authorized and empowered Groome to make said agreement as though he were the actual owner of said equipment, and ratified the agreement after it was made. Groome's title to the property was contested by the trustee, but was upheld by the master to whom the intervention was referred; whereupon exceptions were filed by the trust company, and, upon a hearing, the court confirmed the report of the master, and the receiver was directed to buy from Groome the property in question. From this decree there was taken an appeal to this court, which was defended by Groome in his own name, and re-

sulted in an affirmance of the judgment of the circuit court. Pursuant to the judgment and decree rendered in Groome's favor, the receiver purchased the property from him, and issued receiver's certificates or notes in various sums payable to Samuel W. Groome or bearer, two of which notes are the subject of this controversy. The two notes in controversy were purchased by appellee,—one on January 7, 1892, and the other on February 1, 1892. Appellee investigated the record, and discovered therefrom that Groome appeared to be the owner of the notes or certificates, and learned from Groome that he was the owner. It also employed counsel in Atlanta to investigate the records of the court, and was advised that the title on the record to the property was clear in Groome. After this investigation was had, and the advice received, and one of the certificates purchased, the following letter was addressed to the receiver:

"Philadelphia, January 22, 1892.

"Dear Sir: You will please take notice that of the notes issued by the Marietta and North Georgia Railway Company to Samuel W. Groome on account of the contracts of the said company with the said Samuel W. Groome relating to certain rolling stock, the notes a list of which you will find inclosed, and aggregating $60,339.77, are owned and held by the Third National Bank of Philadelphia; and whatever sums of money or other thing which may be coming from the said railway company or from you on account of said contracts, or either of them, should be paid or delivered to the said bank. Will you please advise me by return mail, or as soon thereafter as you conveniently can, when you will be ready to pay the money ordered by the decrees of the above court, as confirmed by the appellate court of the 5th district, and acknowledge the receipt of this note, together with the inclosure, and oblige.

"Yours resp'y, Theo. F. Jenkins,

"Counsel for Third National Bank of Philadelphia.

"To J. B. Glover, Esq., Receiver of the Marietta and North Georgia Railway Co."

After further correspondence on the subject, the receiver, by petition filed on February 18, 1892, brought the matter to the attention of the court. This petition gives the first intimation on the record that the appellant claimed title to these receiver's certificates. On March 15, 1897, the appellant filed its intervening petition, setting up its claim to the certificates. On March 27, 1897, appellee answered, and on the same day the circuit court entered this order:

"Counsel consenting thereto, it is ordered that the within intervention and answer of respondent thereto be, and the same are, referred to B. H. Hill, Esq., as special master, who is directed to hear and report the facts and the law involved in the questions at issue."

On August 19, 1897, the special master, Benjamin H. Hill, submitted to the parties his report, which, after stating the history of the litigation, the pleadings of the parties, and the proceedings before him as such master, proceeds thus:

"In the first place, I find and report every issue of fact made by the pleadings, which are hereinbefore fully set out, in favor of the National Bank of Chester Valley, Pennsylvania. The evidence before me, which is not disputed, conclusively establishes the truth of the issues made by the intervention of the Third National Bank of Philadelphia, and the answer of the National Bank of Chester Valley, Pennsylvania, in favor of the latter.

"I specifically find and report the following conclusions of fact: (1) Samuel W. Groome sold to the Marietta & North Georgia Railway Company a lot of roll-

ing stock, making a contract in his own name, reserving title to the property until it should be paid for, the purchase money being represented by promissory notes. These notes went into the hands of the Third National Bank, which bank was thereupon by said notes put upon notice that Groome had sold the rolling stock of the railway company as his own property. (2) Samuel W. Groome filed an intervention in his own name against the receiver appointed in the cause of Central Trust Company v. The Marietta & North Georgia Railway Company, claiming the title to said property, and asking that it either be delivered to him by the receiver, or that the court should order the receiver to pay him for it. (3) The Third National Bank of Philadelphia had notice of such intervention, and enabled said Groome to establish his claim to the property. (4) The trustee contested the title of Groome to the property, but Groome's title was upheld by the master to whom the question was referred; and on exceptions the report of the master finding title in Groome was confirmed, and on appeal to the United States circuit court of appeals the decree of the circuit court was affirmed. The intervener had notice, both actual and constructive, of all of these proceedings, but made no claim to the property or any interest therein. (5) Acting under orders of the court, the receiver purchased the property from Groome, and issued to Groome certificates in various sums, payable to 'Samuel W. Groome, or bearer'; the Third National Bank of Philadelphia still failing to set up any claim or interest in said property or in the certificates issued to Groome. (6) The receiver's certificates were thereupon delivered by the receiver to Samuel W. Groome, no one else claiming any interest or right to them. And said Groome, on the 30th day of December, 1891, offered one of the certificates for $5,000 to the National Bank of Chester Valley; and said bank had the question of the legality and validity of such certificates investigated by its counsel in Atlanta, Georgia, who reported in favor of the validity of said certificates; and on the 7th day of January, 1892, one of said certificates for $5,000 was transferred bona fide, and for valuable consideration, to the National Bank of Chester Valley, and on the first day of February thereafter the other certificate, for $5,000, was in the same manner transferred to said bank. (7) The National Bank of Chester Valley therefore came into possession of said certificates lawfully, paying therefor in good faith, and without the slightest notice of any adverse claim of the intervener or anybody else, full value. (8) I find further, under the evidence submitted to me, which is not disputed, that said two certificates belonged to Samuel W. Groome, and he had a right to transfer the same, and that the said National Bank of Chester Valley, in buying the same from him, got a good legal title thereto. (9) I find, further, that the Third National Bank of Philadelphia made no claim to said certificates, or of having any interest therein, until the 27th day of May, 1892, when it filed its answer to the petition of J. B. Glover, receiver, in this court, wherein it for the first time disclosed or set up any interest in said certificates, which long after the two certificates in controversy had been legally sold and transferred by Samuel W. Groome to the said National Bank of Chester Valley. (10) I find, therefore, that outside the question of the legal title, which I find as above to be in the National Bank of Chester Valley, the Third National Bank of Philadelphia is estopped in equity by its own conduct from setting up or claiming any right of ownership or any interest in said two certificates in controversy now in the possession of the said National Bank of Chester Valley. This doctrine of estoppel is so clearly applicable to the facts of the case that I deem it wholly unnecessary to cite any decisions to the court in support of the finding on this point. (11) I do not consider it necessary for the determination of this case to decide the question of whether or not receiver's certificates are negotiable instruments in the ordinary sense of the word 'negotiable,' because I think it unquestionably correct that Samuel W. Groome, under the facts in this case, was the owner of said certificates, and had a right to sell them. On their face, they are payable to said Groome or bearer.

"I therefore report that the intervener, the Third National Bank of Philadelphia, has no right, either in law or equity, to the said certificates, or to the funds in the hands of Robert J. Lowry, commissioner, which he holds to pay them; but that, both in law and equity, the two certificates in controversy belong to the National Bank of Chester Valley, Pennsylvania, and that the said Robert J. Lowry, commissioner, should be directed by the court to pay the

funds in his hands which said two certificates are entitled to receive, with interest, to the said National Bank of Chester Valley or its order, upon the delivery of said certificates properly canceled, to said Robert J. Lowry, as such commissioner. The proceedings and the evidence taken before me in the case are filed with this report properly verified."

This report was filed in the court September 10, 1897. Besides certain exceptions to the merits which we do not deem it material to give in detail, the appellant submitted to the master this exception to his report:

"First exception: That the said special master did, on the 27th day of June, 1897, refuse to continue said cause for the purpose of allowing said intervener to have executed and returned interrogatories and the answers sought to be elicited thereby from the witnesses residing in the city of Philadelphia, in the state of Pennsylvania; whereas said master should have allowed said intervener the time to have gotten the said evidence and the said witnesses on the interrogatories which had been filed in the office of the clerk of the United States court prior to the time at which he overruled the intervener's motion for a continuance, and directed the case to proceed. That intervener had expected to have said witnesses present at said hearing, and had had reason and the right to expect that said witnesses would be at said hearing, and had made every effort to get them present, and had from the witnesses themselves promises of their appearance when said witnesses were prevented from attending said hearing on account of business which was not in their control. Intervener respectfully submits that, owing to these facts, it was entitled to at least the time absolutely necessary for the return of its interrogatories and the answers thereto, and that said intervener should not have been deprived of its right to have its witnesses heard before the said special master, which, under the circumstances, was error, which has deprived intervener of the right and opportunity of bringing to this court the real facts upon which its right and title to the receiver's certificates in question is based."

The case came on for hearing before the circuit court on the exceptions to the master's report, and, in delivering its decision, the learned judge thereof used the following language:

"The only matter that need now be discussed is the earnest contention of counsel for the Third National Bank of Philadelphia that no title passed to Groome as to any of the receiver's certificates delivered to him by the receiver, and consequently he could convey no title to the National Bank of Chester Valley. It seems to be a fact that the certificates were delivered by the receiver to Groome's attorney, because of his belief that the old notes were in the possession of Groome's attorney, and would be promptly delivered up. This turned out to be a mistake, but afterwards the matter was rectified, so far as the court or its receiver was concerned, by the delivery of the notes by counsel of the Third National Bank to the court. It may be that Groome having obtained possession of the notes by means of representations which were made to the receiver as to the old notes under misapprehension, even if honestly made, would have justified the court in recalling the certificates or in directing the receiver not to pay them. But this was a right of the court. Any failure of Groome to get title to the certificates was only as against the court and its officer. As against the Third National Bank, there is abundant evidence in the record to show that Groome was authorized by it to receive the certificates, or, at least, was put by the action of the Third National Bank in position to receive them, and, as to innocent parties without any notice of the Third National Bank's claim, to part with them, and convey title to innocent purchasers. The whole proceeding to assert claim to this rolling stock in this court was in Groome's name. The reservation of title and the contract on which the rights of the parties stood and were determined was in Groome's name; and Groome's proceedings herein must have been, and unquestionably were, known to the Third National Bank. It is unnecessary to decide the question of Groome's right to these certificates as against the Third National Bank, as I am satis-

fied that, in any view of the evidence, the Third National Bank is now estopped from setting up a claim to the amount due on these certificates as against the National Bank of Chester Valley.

"As to the request of counsel of the Third National Bank that the court open and examine certain interrogatories now in court, and which were submitted to the special master, I am satisfied that the special master did not abuse his discretion in this matter. It would be contrary to all precedent and proper practice for the court to examine this evidence, and consider it now in connection with the special master's report. The only method that could be adopted would be to refer the matter back to the special master; and under the facts stated by him, and conceded to be true, I do not feel justified in doing this. The exceptions of the Third National Bank to the report of the special master are all overruled, and the report is confirmed."

And thereupon the court passed its decree in these words:

"It is ordered, considered, and decreed that the said National Bank of Chester Valley be, and it is hereby, decreed to be entitled to the funds in the hands of Robert J. Lowry, Esq., special commissioner, amounting to $14,308.89, to be appropriated to the payment of the two receiver's notes or certificates, for $5,000 each, given by J. B. Glover, receiver, to Samuel W. Groome, or bearer, and to be paid the full amount of said sum upon said notes in preference to any claim or demand, less such amount as has been paid to the special master, B. H. Hill, Esq., and the stenographer, and such amounts accrued or to accrue of cost and expenses as may be properly chargeable against said fund."

The first four errors assigned relate to the merits of the controversy, and are to the effect that the decree against the appellant was wrong in every particular. The fifth and sixth specifications of error are as follows:

"(5) That the court erred in not opening and considering certain depositions that were given by Louis Wagner and Thomas J. Budd, of the city of Philadelphia, and state of Pennsylvania, being the president and cashier, respectively, of said Third National Bank of Philadelphia, having been received in court before the argument upon said exceptions to the report of the said special master, and the court having refused and declined, upon motion of counsel for said National Bank of Chester Valley, to open and consider the same, and which depositions cannot be made a part of the record because the court declined to open and consider the same, although they are filed in the court. (6) The court erred in rendering any opinion or decree or judgment in said intervening petition of the Third National Bank of Philadelphia without opening and considering said interrogatories; and the court further erred in the rendering of its opinion and decree against the appellant, and in favor of the appellee, the National Bank of Chester Valley."

In reference to the fifth and sixth specifications of error, we concur in the view expressed by the circuit court that the special master did not abuse his discretion in declining to continue the hearing, and permit the appellant to take by deposition the testimony of the witnesses named in these assignments. In the exception above set out to the master's report, it is stated that intervener had expected to have these witnesses present at the hearing, and had reason and the right to expect that the witnesses would be at the hearing, and had made every effort to get them present, and had from the witnesses themselves promises of their appearance when the witnesses were prevented from attending the hearing on account of business which was not in their control. From the assignments of error which we are discussing, it appears that the witnesses were Louis Wagner and Thomas J. Budd, president and cashier, respectively, of the appellant. It appears from the master's report that, in pursuance of the order of ref-

erence, the hearing before him began on May 10, 1897; that after taking the evidence of the witnesses then offered by the National Bank of Chester Valley, and the documentary evidence offered by the Third National Bank of Philadelphia, by consent of parties the hearing was adjourned subject to a notification from the special master as to when it would again convene. Acting under this consent, the special master reassigned the continuation of the hearing to June 14th. On that day the counsel representing the intervener (appellant here) and counsel representing the National Bank of Chester Valley, appellee, appeared before the master. Counsel for the appellee stated that he had no further testimony to offer, and counsel for the appellant stated that he had none ready to offer, and did not know whether he would offer any more or not. Thereupon, by consent of both parties, the master again reassigned the hearing of the case for 10 days from that date. By distinct announcement it was understood by counsel for both parties that the hearing on the adjourned date would be peremptory, and that there should be no further continuance by the master at the instance of either party. At the expiration of the 10 days, the same counsel for both parties appeared before the master, when the counsel for appellee stated that he had no further testimony to offer, and the counsel for appellant stated that he had just prepared a set of interrogatories which he desired to have answered. Counsel for the appellee objected to the continuance, and the master, in view of what had occurred before him previously, and further being of the opinion that sufficient time had been given the appellant for taking testimony, decided that he would not further postpone the hearing of the cause, and asked counsel if they desired to be heard in argument. Both stated that they would submit written arguments to the master. The master consented to give them such time as they deemed necessary for the preparation of briefs. They concurred that five days would be sufficient time for that purpose. Before the expiration of the five days, counsel on behalf of the National Bank of Chester Valley submitted a brief. Counsel for the Third National Bank of Philadelphia did not submit a brief or signify his purpose to do so. After the expiration of the five days, the master made up his report and conclusions from the brief of counsel for the appellee and the evidence that had been submitted. It was suggested in the oral argument before us that the proceedings before masters in the Northern district of Georgia are generally somewhat irregular and the practice lax. It is evident from the ruling of the circuit court in this case that such proceeding and practice are not sanctioned by the learned judge who usually presides in that court, and who presided on the hearing of this case; and we concur in and commend his efforts to restore such proceedings to a course of such regular conduct and rational practice as shall comport with the proper speeding of the cause on trial before the master. If the master was right in declining to continue the hearing in order to give time for the testimony to be taken and brought in, manifestly the circuit court was right in refusing, after the report of the master had been filed, to open the testimony, and consider it in connection with the master's report.

In regard to the merits of the case, to which the assignments of error

not copied into this opinion are addressed, it is to be observed that, in reference to all the matters in this case, the court, on consent of both of the parties, entered its rule that the pleadings of the appellant and of the appellee (intervener and respondent below) should be referred to the special master, with directions to hear and report the facts and the law involved in the questions at issue; that is to say, by consent of counsel, the whole case was referred to a selected special master, who was directed to hear and report the facts and the law involved in the whole case. Substantially similar in all of its material features to this reference was the reference to the special master in the case of Kimberly v. Arms, as shown in the opinion of the supreme court (129 U. S. 512, 9 Sup. Ct. 355). In that case exceptions to the findings of fact and of law contained in the report of the special master had been sustained by the circuit court, and the report practically set aside. The circuit court had refused to treat the findings as presumptively correct, so as to impose upon the excepting parties the burden of showing error in them. This was the first question considered on appeal. It is fully discussed, and the conclusion reached that the circuit court did not give to the findings of the master the weight to which they were entitled; that they should have been treated as so far correct and binding as to not be disturbed unless clearly in conflict with the weight of the evidence upon which they were made. Of course, it must always be in the sound discretion of the trial court to determine when the findings are clearly in conflict with the weight of evidence upon which they were made. In this case the trial court had determined that the findings of the special master are not only not clearly in conflict with the weight of the evidence upon which they were made, but are amply supported by the weight of the evidence, in which view of the case we concur.

Counsel for the appellant, in their printed brief, make, and insist on, as their sixth contention, that as the testimony shows Groome received for the two receiver's notes of $5,000 each from the appellee, the National Bank of Chester Valley, only $7,200 in money, the appellee in no event would be entitled to recover from the fund more than this amount actually paid by it to Groome. The testimony does show that the appellee paid to Groome in cash $3,700 for one of the certificates, and gave him credit on his overdrawn bank account for $1,500, the certificate, with accrued interest, amounting at the time to $5,200; and that for the other certificate the appellee paid $3,500 in cash, and credited the still overdrawn bank account of Groome with the balance, $1,500. This contention was also insisted on in the oral argument of counsel, but it is not alluded to in the exceptions to the master's report. There is nothing to indicate that the point was made before the master or before the circuit court in its consideration of the exceptions to the master's report. It is not mentioned in the assignments of error, and therefore the suggestion comes to us in a manner which does not warrant us in entertaining it or allowing it, however sound it may be and prevalent it might have been if it had been duly made.

After a careful examination of the case, we find no error for which the judgment should be reversed, and it is therefore affirmed.