## M. L. BEST, et al., v. JESSE C. CRALL.

PROMISSORY NOTE, When Payment of, No Discharge of. The payee of a negotiable promissory note, long before its maturity, indorsed and delivered it to a bank, to be used as collateral security for the payment of a buggy, purchased at the time from the plaintiff. Before maturity, but after the indorsement and delivery to the bank, though without knowledge thereof, the maker paid said note to the payee, and took a receipt therefor. Held, That such payment did not discharge the note, or defeat a right of action thereon.

### Error from Atchison District Court.

ACTION by Crall against Best and another, on a certain promissory note. Trial at the June Term, 1879, of the district court, and judgment for the plaintiffs. The defendants bring the case here. The nature of the action, and the facts, are sufficiently stated in the opinion.

S. H. Glenn, and Greenlee & Jackson, for plaintiffs in error:

The plaintiffs in error having paid the notes sued on, in full, to George Lamberson, jr., the payee of the notes, about the time the nine-months note became due, without notice or suspicion that any other person claimed any interest in the notes, can they be legally or equitably held liable to pay the notes over again to the defendant in error? If they can be thus held, then upon what rule of law or equity?

From the record, the court below evidently viewed the transaction between Crall and Lamberson as a transfer of the right, title and interest of the latter in the notes to the former, and it must have regarded the transfer as of such a character as would amount to an absolute, unrestricted indorsement within the meaning of the statute and law-merchant, and that Crall must have taken an absolute, unrestricted title to the notes, as bona fide holder of commercial paper, received in the usual course of business at the time of the deposit of the notes and agreement in the Exchange bank of Wm. Hetherington & Son. Upon the facts disclosed by the record, was this position of the court tenable? We think

not. Negotiable paper can only be transferred free from equities by "indorsement." (Comp. Laws, ch. 14, § 1; 11 Kas. 464–470.)

But such indorsement must be such as "to absolutely transfer and vest the property thereof in each and every indorser and holder thereof, successively." (Statute, *supra*.) Such statute is not an innovation upon, but is simply a statement of the law-merchant. The indorsement must be accompanied by delivery, and must be absolute and unrestricted. It must be a delivery (under such indorsement) with a view of making a contract whereby the relation and liability of indorser and indorsee is created and fixed, and it must be an *actual* delivery to the indorsee, which attends the indorsement as an essential element of the contract of indorsement. (1 Daniel on Neg. Inst., § 667; 16 Wis. 574; Bayley on Bills, 2d Am. ed., 103.)

If the holder be an indorsee where indorsement is necessary, or transferee where delivery only is necessary, it must then be ascertained whether he holds as *owner*, or agent of the real owner. If only authorized to *collect* and *apply* the proceeds in payment of a debt due to himself, that would not give him title to the paper itself; he would be the agent of the owner, and any defense against the real owner would be available against such holder. He would in fact be the agent of the owner, authorized to apply the proceeds of the debt due him from such real owner. (1 Dan'l Neg. Inst. §§ 821, 822, and notes 1 and 2; 2 Pars. Notes and Bills, 225, 423.)

How stands the case at bar? The answer controverts the indorsement, and is verified. Plaintiff below introduced in evidence the notes with the name "George Lamberson, Jun., col.," on the backs thereof; also, the contract which was executed *concurrently* with the writing of the said words on the backs of said notes, and was in law, as was proved in fact, the terms of the agreement relating to the deposit of the notes in the bank, and will be construed as though such

agreement was written in full upon the back of each of said notes over the signature of said "George Lamberson, Jun., col." It will be here observed that such contract did not contemplate a *delivery* of the notes to Crall at any time, either present or prospective, but a deposit in the bank, there to remain. Not the transfer of the title of the notes to Crall, but the right to collect, not the whole of said notes, but only so much as might be due to Crall on the contract. Such was the understanding of the defendant in error.

But whether the notes came into the possession of Crall before or after maturity, they came into his possession under the restrictions and limitations in the contract, and did not come to him as an indorsee with the rights and liabilities of the holder of the legal title thereto, and the notes were subject to all the equities in favor of the maker which existed at the time the maker was notified of the interest of defendant in error in such notes, if any.

*Everest & Waggener*, for defendant in error :

The defendants in the court below, on the trial of the case, as a defense, offered to prove that they had no knowledge or notice that the notes had been transferred to Crall. This evidence was objected to by plaintiff, and the objection was sustained by the court, and this is one of the errors complained of. The further error ( and we believe the only additional one complained of) is, that the court erred in rendering a judgment against Lamberson in favor of Crall on this state of facts. (16 Kas. 530.) There was no pretense of any fraud or collusion between Crall and Lamberson. Evidence of payment made by the makers of said notes to Lamberson was wholly immaterial and incompetent. ( 21 Kas. 546; 2 Daniel on Neg. Inst., §§ 231, 232.)

The opinion of the court was delivered by

BREWER, J.: This was an action and judgment on a promissory note, dated March 24, 1873, and due in eighteen months,

executed by defendants to one George Lamberson, jr., and by him indorsed to Crall, the plaintiff. The note was in form an ordinary negotiable note.

On the 24th of April, 1873, Crall sold to said Lamberson, jr., a buggy and harness, for $290, which, by the terms of the contract (which was in writing), might be paid for in hay at a stipulated price, which hay was to be delivered by Lamberson, jr., from time to time, up to March 1st, 1874. As security to Crall that Lamberson, jr., should perform his part of the contract and deliver the hay, or otherwise pay for the buggy and harness as per their written contract, Lamberson, jr., agreed with Crall in their written agreement that Lamberson, jr., should deposit certain notes at the Exchange bank of Wm. Hetherington & Son, in the city of Atchison, as collateral security for the faithful performance of the contract. This part of the agreement reads as follows, viz.:

"It is agreed that the said George Lamberson, jr., shall deposit certain notes as collateral security for the faithful performance of his obligation in this contract, which notes are to be deposited at the Exchange bank of Wm. Hetherington & Son, and so to remain for the benefit and security of the said Crall until the fulfillment of this contract; and in the event of failure by said Lamberson, the said Crall may and shall have the right to collect the same to the amount that may be due him in the premises. In witness whereof, the said parties," etc.

In pursuance of this agreement, as shown by Crall's evidence, the notes with the written agreement were inclosed in an envelope, sealed up, and deposited in Hetherington & Son's bank, on the 24th day of April, 1873; and among other notes so deposited were two notes sued on in this action, upon one of which the defendant in error, Crall, obtained this judgment which the plaintiffs in error seek to reverse.

The statute of limitations defeated the claim in the other note. The defense interposed was payment to Lamberson, made before the maturity of this note, and without knowledge of any transfer. The court refused to permit evidence of such payment, and this presents the question for our consideration.

We think the ruling of the court correct. There is no question but that the note was indorsed at the time it was placed in the bank as collateral, and none that the payee failed to deliver the hay, except about three tons, or make other payment; so that Crall had a valid claim for much more than the amount of this note, and for which this note was indorsed and transferred as collateral security. The notes were afterward, by consent of Lamberson and Crall, taken from the bank, and left with Crall. There is some little uncertainty as to the time when this was done, but we think this immaterial, and that the ruling would have been correct even if the notes had remained in Hetherington's bank up to the time of suit. By the indorsement, the legal title was transferred, and Crall was by the contract given the right to collect up to the amount due him for the buggy and harness. In 1 Daniel on Negotiable Instruments, § 824, the author says:

" When the note or bill of a third party, payable to order, is indorsed as collateral security for a debt contracted at the time of such indorsement, the indorsee is a *bona fide* holder for value in the usual course of business, and is entitled to protection against equities, offsets, and other defenses available between antecedent parties, provided, of course, that the bill or note transferred as collateral security is itself, at the time, not overdue."

There is no pretense that Lamberson had the note at the time of payment to him, or that he was authorized by Crall to receive the money. Crall had done nothing to mislead the makers, nothing upon which to base any estoppel against him. Now a maker of a negotiable note who before its maturity pays the payee the amount thereof without a surrender of the note, does so at his peril. If the payee is no longer the holder, or entitled to receive the money, the payment in no manner discharges the paper, or prevents the real holder from recovering upon it. The case of *Davis v. Miller*, 14 Gratt. 13, is still stronger. In that case, the indorsement was after maturity and protest for non-payment. After transfer, payment was made to the indorser, and receipt taken. The maker had no notice of the transfer till after the payment.

It was held that the payment was no defense.   In the opinion, Moncure, J., uses this language:

. "On the other hand, however, it may be answered that no case can be found in which it has been decided, or even said, that payment to an indorser after an indorsement is a good defense against the indorsee.   That no decision can be found the other way, is well accounted.for by the fact that the payment of a negotiable note is very rarely made without taking in the note, or having the payment, if partial, indorsed thereon; and no occasion has therefore occurred for a decision of the question. That no such occasion has occurred, is in itself an argument in favor of the defendant in error.   .   .   .   There is at least as much reason in holding the maker of a note responsible for want of caution in making a payment, as for holding a purchaser responsible for want of caution in making a purchase.   Indeed, there is more, for due caution will always protect the former against an improper payment, while the greatest caution may not protect the latter against an improper purchase.   The former is always safe in making payment to the legal holder of the note, which he may thereupon require to be produced and surrendered to him, while the latter is often deceived by a false possession, and must at his peril look to the title, which may be separate from the possession." (See also *Coffman v. Bank*, 41 Miss. 212.

The case of *McCrum v. Corby*, 11 Kas. 464, is not in point, for in that there was no indorsement.   Here the paper was regularly indorsed.   Nor is this indorsement one which simply constituted the holder, agent of the indorser, such an indorsement as is spoken of in 1 Daniel on Neg. Inst., § 822, to which we are referred by counsel.   For this transfer was irrevocable. The indorser had no control of the paper, could acquire none except by payment of the debt for which the paper was pledged.   Whether the legal title passed directly to Crall, or to the bank as trustee for his benefit, is immaterial.   It had passed away from Lamberson, and he held neither legal title nor equitable right to the proceeds.   Therefore payment to him was to one without actual right to receive it, and without possession of any evidence of title or right to receive payment.   Conceding, as counsel contend, that the indorsement is to be construed along with the agreement as really one

transaction and one instrument, yet such an indorsement passes title, and, except as limited by the restriction, cuts off all equities. The note was indorsed as security for Lamberson's debt to Crall, a debt contracted at the time of the indorsement. That debt is unpaid, and Crall has a right to recover.

The judgment will be affirmed.

All the Justices concurring.