THE NATIONAL BANK OF ST. JOSEPH, MO., v. JUDITH DAKIN *et al.*

1. NEGOTIABLE NOTE—*Unauthorized Use—Bona Fide Holder.*  Where the payee of a negotiable promissory note indorses the same in blank, before it is due, and intrusts it to others upon condition, and with the direction that the proceeds of the note, when collected, shall be applied to a designated use, and those to whom it is intrusted, in violation of instructions and conditions, transfer the note to another as security or in payment of a debt, and such party receives it in due course of business, without notice of the conditions or instructions under which it was held, and in good faith, he is entitled to the position of a *bona fide* holder for value, and to protection against equities, offsets and other defenses which might have been available between antecedent parties.

2. JUDGMENT, *Not Sustained.*  The testimony examined, and *held* to be insufficient to sustain the judgment that was rendered.

*Error from Phillips District Court.*

ACTION by *Judith Dakin* against D. D. Bemis and others for foreclosure of a mortgage.  *The National Bank of St. Joseph, Mo.,* intervened.   From a judgment against the bank, at the May term, 1890, and in favor of defendant Bemis, the bank brings error.

*Wm. C. Don Carlos,* for plaintiff in error:

It is contended by plaintiff in error that the $700 Gould note is negotiable paper; that plaintiff in error became the holder and owner thereof for value before due, in the regular course of its business; and that it ought to have recovered thereon by the findings and judgment of the court; and it is

to this contention that the first to the sixth assignments of error, inclusive, in plaintiff's petition in error relate, and we think they may with propriety be considered together. In support of our position, the following authorities are conclusively in our favor: *Maitland v. National Bank*, 17 Am. Rep. 727; Story, Bills, p. 192; Story, Prom. N., p. 195; *Swift v. Tyson*, 16 Pet. 1; 20 How. 343; 21 id. 432, 439; 1 Pars. Bills, p. 226; 2 Am. & Eng. Encyc. of Law, p. 393; *Draper v. Cowles*, 27 Kas. 484; *Savings Association v. Hunt*, 17 id. 532; *Mann v. National Bank*, 30 id. 422; *Williams v. National Bank*, 17 Atl. Rep. 382.

On the principle that "an existing debt affords sufficient consideration for the pledge of collateral security for its payment," besides the case of *Swift v. Tyson*, we cite Jones, Pledges, 107; *Bank of Metropolis v. New England Bank*, 42 U. S. 234; *Goodman v. Simonds*, 61 U. S. 343; *McCarty v. Roots*, 62 id. 432; *Spencer v. Sloan*, 6 Wes. Rep. 419; 1 How. 234; 100 U. S. 239; 102 id. 14; 108 Ind. 183.

"A person will be liable to a *bona fide* holder for value on negotiable paper which he intrusts to an agent for negotiation, and which the agent misappropriates."

*Goodman v. Simonds*, 20 How. 343; *Beush v. Scribner*, 11 Conn. 388; *Fisher v. Fisher*, 98 Mass. 303.

"The same result follows where an accommodation party trusts the paper to the accommodated party for a specific purpose, and the latter wrongfully uses it for a different purpose."

See *Chicopee Bank v. Chapin*, 8 Met. 40; *Maitland v. National Bank*, 40 Md. 240; *Woodruff v. Hill*, 146 Mass. 310; *Hemphill v. Bank of Alabama*, 6 Smedes & M. 44; *Fanning v. Farmers' Bank*, 8 id. 139. See, also, *Bush v. Peckard*, 3 Har. (Del.) 385; *Kohn v. Watkins*, 26 Kas. 691; 49 Am. Rep. 336; *Collins v. Gilbert*, 49 U. S. 753; *Gage v. Sharp*, 24 Denio, 583; *Watson v. Russell*, 3 Best & S. 34; *Clark v. Thayer*, 105 Mass. 210; *Vatlett v. Parker*, 6 Wend. 615; *Fearing v. Clark*, 16 Gray, 74; 77 Am. Dec. 394; *Graff v. Logue*, 61 Iowa, 704; *Oates v. National Bank*, 100 U. S.

42—54 KAS.

239; *Goodman v. Simonds*, 20 How. 343; 1 Pars. Notes & B. 228–231; Story, Prom. N., § 195; 1 Dan. Neg. Inst. 820–842, and notes; Leading Cases upon Bills of Exchange and Promissory Notes, by Redfield and Bigelow, 186–217, and notes.

*John V. Coon*, for defendants in error Bemis and First National Bank of Frankfort:

The issues made by the interplea or cross-petition of the National Bank of St. Joseph and the answer thereto of D. D. Bemis, and the answer and cross-petition of the First National Bank of Frankfort, and the reply of the National Bank of St. Joseph, were the matters tried and decided at the May term, 1890, of which plaintiff in error here complains.

The court, upon the evidence, found the issues with D. D. Bemis and against the plaintiff on all the controverted points; that Bemis was the owner of the note, and rendered judgment accordingly. There could be no doubt that Bemis was the owner of the note, and that it was left with Bodwell & Hamilton, in trust, to receive pay and pay the Dakin debt, and that they unlawfully and wrongfully placed it with plaintiff in error.

The finding of the court is conclusive. This supreme court will not look beyond the finding of the district court in the case. The evidence is not in the record. If it were, this court will not review it; and if it would, it would not differ with the district court in the finding of fact, that it was the property of Bemis — the fund to pay the Dakin debt, relieve Cheney of the mortgage lien on his land, and relieve the balance of the land of the Dakin lien, to the benefit of the Frankfort bank.

It appears to us the errors complained of are wholly the decision of the court on the facts, that this court will not review as to facts, and that the result must be the affirming of the judgment of the district court.

The opinion of the court was delivered by

JOHNSTON, J.: D. D. Bemis, who was the owner of a quarter section of land in Phillips county, executed a mortgage thereon to Judith Dakin to secure the payment of a debt. Afterward, he sold one-half of the tract to W. J. Gould, and as a part of the purchase price took Gould's note for $700, payable in five years, with annual interest at the rate of 8 per cent. per annum, and took a mortgage on the same land to secure the payment of the note. It was stipulated and agreed in writing by the parties that the $700 debt to be paid by Gould should be paid to Judith Dakin, to extinguish the mortgage debt due to her, and to satisfy and discharge a part of the original mortgage which Bemis executed to her. There was a further stipulation that the note and mortgage given by Gould should be deposited with the banking firm of Bodwell & Hamilton, and that payments made to them thereon should be immediately applied to the satisfaction of the Dakin mortgage debt. Afterward, the firm of Bodwell & Hamilton had other dealings with Bemis, and took several notes from him, among which was one for the sum of $2,062, which was secured by another mortgage upon the land previously mortgaged to Judith Dakin. The last-mentioned note was sold and transferred to the First National Bank of Frankfort, and several other of the notes mentioned were used by Bodwell & Hamilton as collateral security to obtain a loan from the National Bank of St. Joseph, Mo. Default having been made in the payment of the Dakin mortgage, a proceeding in foreclosure was begun, in which all of those interested in the land were made parties. All of the various claims and liens were adjusted without difficulty, except the note for $700 due from Gould to Bemis, which, with the mortgage to secure the same, was deposited with Bodwell & Hamilton under the contract heretofore mentioned.

From the record, it appears that this $700 note, which was payable to the order of Bemis, was indorsed in blank and left

with Bodwell & Hamilton, and that, instead of retaining it
and collecting and using the proceeds to discharge the Dakin
mortgage debt, in accordance with the agreement, they wrong-
fully indorsed and transferred the same to the National Bank
of St. Joseph, Mo., as collateral security for a loan obtained
from that bank, and, subsequently, they made an absolute sale
and transfer of the same in payment of a portion of the debt
due from them to the National Bank of St. Joseph. After-
ward Bodwell & Hamilton became insolvent, and when the
foreclosure proceeding was begun the National Bank of St.
Joseph was allowed to interplead and set up the Gould note
for $700, and under the mortgage to secure the same they
claimed a second lien upon the premises. Some of the other
claimants contested the validity of the transfer of the $700
note to the National Bank of St. Joseph, alleging that Bemis
did not indorse or transfer the note, but merely left the same
with Bodwell & Hamilton in trust, the proceeds of which
were to be collected by them and used to extinguish the
Dakin debt; that they wrongfully diverted the $700 note so
left with them to the National Bank of St. Joseph, which
bank obtained no title or ownership therein. Bemis, the
payee of the note, also answered, setting up the fraud of Bod-
well & Hamilton, and averring that the note was never in-
dorsed or transferred to the bank as its absolute property, but
was only delivered as collateral for the debt of Bodwell &
Hamilton, and that the debt has since been paid from other
collaterals held by the bank. He further averred, that the
bank is not a *bona fide* owner or holder for value, but ob-
tained the same unlawfully and in fraud of the rights of Be-
mis and the other claimants.

The main issue on this branch of the case was the validity
of the transfer of the Gould note, or whether the bank was
a *bona fide* owner and holder of the same. On this issue, the
court found against the bank, that Bemis was the owner, and
that there was due to him thereon $976.88, and decreed that
the money when collected should be paid in discharge of the
Dakin debt and lien. It is undisputed that the note was

negotiable in form; that it was transferred to the bank before due in the regular course of business; that it was received by the bank in good faith, as collateral security for a loan of money by the bank to Bodwell & Hamilton; and, that it was finally transferred absolutely in partial payment of the debt for which it was originally transferred as security. It was accepted as security for an actual debt, and there is nothing to show that the bank had any notice of the true ownership of the note, or that Bodwell & Hamilton had put it in circulation in violation of any trust or of any condition under which they held it. Under such circumstances, the bank must be regarded as a *bona fide* holder, unaffected by the wrongful transfer of Bodwell & Hamilton, or of any equities existing as between the antecedent parties. Although there was a denial of the allegation of indorsement and transfer by Bemis, the proof is clear that he did indorse it in blank, and in his own testimony he declines to say that he did not so indorse it. Having indorsed a negotiable promissory note in blank and intrusted it to others, he cannot complain if he is held liable to an innocent holder for value, although it may have been wrongfully used or diverted from the purpose for which it was intended. Under the unrestricted indorsement, anyone without notice of the title had a right to assume that Bodwell & Hamilton were the owners of the same.

"The mere possession of a negotiable instrument payable to order and properly indorsed is *prima facie* evidence that the holder is the owner thereof; that he acquired the same in good faith, for full value, in the usual course of business, before maturity, without notice of any circumstance that would impeach its validity, and that he is entitled to recover upon it its full face value as against any of the antecedent parties." (*Mann v. National Bank*, 34 Kas. 747.)

It is true that Bodwell & Hamilton committed a flagrant fraud upon Bemis and the other parties in the transfer of the note, but as Bemis intrusted the paper to others in such form as to enable them to hold themselves out as the absolute own-

ers of the note, he should suffer rather than the bank, which had no notice or knowledge of the wrong. In such cases, the rule is, that of two innocent persons, the one who placed it in the power of others to commit the wrong must suffer for his misplaced confidence rather than the one who is not in fault. As far as the testimony goes, nothing on the face of the paper or in the circumstances of the transfer would give rise to any suspicions in regard to the title of Bodwell & Hamilton. They had frequently borrowed money from the bank, and had transferred to it as collateral security numerous promissory notes of their customers, and among them were several others upon which Bemis was liable. The bank having made a loan upon the pledge and transfer of the collateral security, is entitled to the position of a *bona fide* holder for value, and to protection against equities, offsets and other defenses which might have been available between antecedent parties. It is even held that a preëxisting debt affords sufficient consideration for the transfer of collaterals as security for its payment. (*Best v. Crall*, 23 Kas. 482; *Swift v. Tyson*, 16 Pet. 1; *Goodman v. Simonds*, 20 How. 343; *Oates v. National Bank*, 100 U. S. 239; *Railroad Co. v. National Bank*, 102 id. 14; *Spencer v. Sloan*, 108 Ind. 183; *Maitland v. National Bank*, 40 Md. 540; Jones, Pledges, § 107; Story, Prom. Notes, § 195; Dan. Neg. Inst., § 824, *et seq.*) If there was no indorsement of the note by Bemis, or if the bank knew of the conditions under which Bodwell & Hamilton held the note, the bank would not be entitled to protection as a holder for value. The testimony in the record fails to show that the debt which was secured by the transfer of the note has been paid. Indeed, it would appear that, if the note should be collected by the bank and the proceeds applied on what was due to it from Bodwell & Hamilton, a considerable part of the debt would still remain unsatisfied. We conclude that the testimony is insufficient to sustain the judgment that was rendered, and for that reason there must be a reversal and a new trial.

All the Justices concurring.