# BANK *v.* JOHNSTON.

## (*Knoxville.*    October    23,    1900.)

1. APPEAL. *Sufficiently granted, when.*

   Although not granted in express terms, an appeal is sufficiently granted in contemplation of law where the final decree recites prayer for appeal, and gives time "to make and file appeal bond," which was accordingly done. (*Post, pp. 522–525.*)

   Case cited : Sellars *v.* Sellars, 101 Tenn., 606.

2. SAME. *From decree of Court of Chancery Appeals.*

   Appeal must be taken from decree of the Court of Chancery Appeals, not within ten days after the date of filing its opinion, but within ten days after entry of decree. (*Post, pp. 524, 525.*)

   Act construed : Acts 1897, Ch. 131.

   Case cited and distinguished : Patterson *v.* Bank, 101 Tenn., 511.

3. WRIT OF ERROR. *Bond for, not required, when.*

   No additional bond is required upon prosecution of writ of error to reverse a decree of the Court of Chancery Appeals, and, therefore, the fact that such additional bond is filed out of time affords no ground for dismissal of such writ of error. (*Post, p. 526.*)

4. BILLS AND NOTES. *Taken in payment of pre-existing debt.*

   The holder of a note, taken before maturity in payment of a pre-existing debt, is not a holder for value in due course of trade, in such sense that the maker's defenses and equities are cut off. (*Post, pp. 526–530.*)

   Cases cited : Craighead *v.* Wells, 8 Bax., 38; Richardson *v.* Rice, 9 Bax., 290; Kimbro *v.* Lytle, 10 Yer., 423; Gosling *v.* Griffin, 85 Tenn., 738; Ferriss *v.* Tavel, 87 Tenn., 386; King *v.* Doolittle, 1 Head, 77; Anderson *v.* Douglass, 1 Tenn. Ch., 442; Bridges *v.* Robinson, 2 Tenn. Ch., 725; Rhea *v.* Allison, 3 Head, 178; Martin *v.* Bank, 94 Tenn., 176.

---

Bank *v.* Johnston.

---

5. SAME.   *Failure of consideration.*

A vendee, in possession under deed with covenants, who removes
an incumbrance from the land, which constituted a breach of
covenant, can defeat the collection of his notes given for the
purchase price, and prevent enforcement of the vendor's lien
therefor, only to the extent of the amount paid by him to re-
move the incumbrance.   (*Post, pp. 531–533.*)

Cases cited: Austin *v.* McKinney, 5 Lea, 488; Callis *v.* Cogbill, 9
Lea, 137; Buchanan *v.* Alwell, 8 Hum., 516; Barnett *v.* Clark, 5
Sneed, 435; Winfrey *v.* Drake, 4 Lea, 293.

---

FROM HAMILTON.

---

Appeal from Chancery Court of Hamilton County.
T. M. McConnell, Ch.

Traynor & Smith for Bank.

W. L. Eakin for Johnston.

McAlister, J.   This bill was filed to foreclose
a deed of trust on a certain lot in Highland
Park for the collection of thirty-one notes therein
secured.   The Chancellor dismissed the bill for
reasons not necessary now to be recited.

On appeal the Court of Chancery Appeals modi-
fied the decree of the Chancellor so as to permit
complainant to recover a personal judgment against
the defendants on the notes, but refused to fore-
close the deed of trust.   The first question made
in the Court of Chancery Appeals was that com-
plainant's appeal should have been dismissed for

the reason that the record fails to show that the appeal from the decree of the Chancellor was granted. The Court of Chancery Appeals, without deciding this question, proceeded to consider the case on its merits, and rendered a final decree. Defendant's counsel renews his motion in this Court to dismiss the appeal for the reason al· ready stated.

On the subject of the appeal the record of the Chancery Court recites, viz.: "From the judgment and decree rendered by this Court on the sixth day of October, 1899, in the above cause, the complainant, the Bank of Charleston, comes and prays an appeal *in toto* to the next term of the Supreme Court to be held at Knoxville on the second Monday in September, 1900, and the complainant being a nonresident is allowed thirty days in which to make and file an appeal bond." It will be observed it is not expressly stated in this entry that the prayer for an appeal was granted. The complainant, however, executed bond on October 23, 1899. It is recited in the bond that it. is · executed upon an appeal prayed from a decree of the Court rendered at the October term, 1899, to the next term of the Supreme Court to be held at Knoxville, etc., which to it was granted on bond and security being given as required by law. The question presented is whether upon these recitals it appears that the appeal was granted.

In the case of *Sellars* v. *Sellars,* 17 Pickle, 606, it appeared that the entry of appeal failed to show that it had been granted. The contention of defendant was that the recital in the appeal bond that the appeal had been granted was sufficient. We held this position untenable. We had previously held, in an unreported case at Jackson, that a recital in the bill of exceptions that an appeal had been granted was insufficient.

The case at bar is distinguished from the two cases cited in this, that the entry of appeal shows that an appeal was prayed, and the Chancellor allowed the defendant, a nonresident, thirty days in which to make and file the bond. We think that the allowance of time by the Chancellor for the defendant to give bond is equivalent to a recital that the appeal was granted, for otherwise the Chancellor would certainly not have given time to make the appeal bond. So that we hold that the appeal in this case was granted.

Complainant now moves to dismiss the defendant's appeal from the decree of the Court of Chancery Appeals upon the ground that it was not taken within ten days. The opinion of the Court of Chancery Appeals was filed on the sixteenth day of June, 1900, but no decree was entered until September 1, 1900. In the meantime, to wit, on the twenty-third of August, 1900, the complainant filed a petition to rehear. On the first of September thereafter the petition was

in all respects denied except that the Court ordered a sale of the five-twelfths interest of defendant, Minnie K. Lowe, in the property attached. On that day, to wit, September 1, the decree in the cause was for the first time entered, although the opinion of the Court was filed June 16, 1900. This was the first opportunity that was presented to the defendants to 'appeal, since no decree prior to that time had been entered by complainant, and the appeal of defendants was accordingly incorporated in that decree. The complainant's motion to dismiss defendants' appeal is based upon the idea that it should have been taken within ten days from the filing of the original opinion. Counsel cite in support of this position *Patterson* v. *Bank,* 17 Pickle, 511, but that case only holds that a petition to rehear must be presented within ten days from the filing of the opinion, and not within ten days from the entry of the decree. The time for appealing, however, is a different matter, and is regulated by the statute creating the Court of Chancery Appeals and the amendments to said Act. The Act of 1897, Chapter 131, amending the Act creating the Court of Chancery Appeals, provides that "hereafter no writ of error or appeal in the nature of a writ of error shall be taken to the Supreme Court from any decree of the Court of Chancery Appeals after the expiration of ten days from the decree of the Court of Chancery Appeals."

There is still another question of practice aris-
ing upon the record. It is a motion interposed
by defendant to dismiss complainant's writ of
error. It appears that complainant, on the seventh
of September, filed the record for writ of error.
On the twenty-first of September complainant filed
with the Clerk of this Court a bond for writ of
error. The ground of defendant's motion to dis-
miss the writ of error is that complainant's bond
should have been given within ten days from the
entry in the Court of Chancery Appeals, which,
as already stated, was September 1, and the bond
for writ of error was not filed with the Clerk
until the twenty-first of September. The statute
expressly provides that an appeal or writ of error
to the Supreme Court may be prosecuted without
any additional security. So that the bond filed
with the Clerk on the twenty-first of September
was wholly unnecessary, and the motion of defend-
ant to dismiss the writ of error, because bond
was not given within the ten days, is not well
made.

Passing now to the merits of the case, we have
already stated that the bill herein was filed to
foreclose a deed of trust for the collection of
thirty-one notes therein secured. The facts as
found by the Court of Chancery Appeals are,
that on the eleventh of November, 1890, Mrs,
Cordelia Kershner conveyed lot No. 47 in High-
land Park to one Fred Ferger, in trust to secure

payment of a note for $4,000 executed by Mrs. Kershner to the Merchants and Mechanics Building and Loan Association of Chattanooga. At that time the said Ferger was secretary of the association. This deed of trust was duly recorded on the fifteenth of July, 1891. Mrs. Kershner, for the consideration of $1,800, conveyed by fee simple deed the lot in question to Matilda C., Minnie K., and Frances P. Johnston. Twenty-five dollars was paid in cash, one note executed for $17, and seventy-nine notes for $15 each, and the balance of the said purchase price, to wit, $573, was to be paid to the Merchants and Mechanics Building and Loan Association aforesaid. This deed was duly acknowledged and registered. On the same day of the execution of the deed, the purchasers, the Misses Johnston, executed a deed of trust on said lot to A. W. Gaines, trustee, for the purpose of securing their eighty purchase notes for $15 each, executed to Mrs. Kershner. This instrument was also duly acknowledged and recorded. On the fifth of August, 1895, E. C. Sharon, who was at that time secretary of the building and loan association, foreclosed the deed of trust which Mrs. Kershner had executed to Fred Ferger, trustee and secretary, for the benefit of the said building and loan association. At said sale the association became the purchaser of the lot at the price of $300, and a deed was executed to it by Sharon, trustee, which was duly registered.

The association, on same day it purchased the lot, sold it to the said Misses Johnston for the sum of $400.

The Court of Chancery Appeals further finds that the complainant, the Bank of Charleston, acquired the notes executed by the Misses Johnston to Mrs. Kershner in part payment of an indebtedness of several thousand dollars due from Mrs. Kershner to the bank.

That Court, in the opinion of the majority, further finds there is no evidence that the Misses Johnston failed to pay to the building and loan association the sum of $573 which they assumed to pay as a part of the purchase money for the lot purchased from Mrs. Kershner, and that said sum must be considered as paid.

Further, that Court held that complainant bank was affected with knowledge, at the time it took the notes, that a deed of trust rested upon the lot No. 47 prior to the deed of trust which the Misses Johnston had executed to Gaines to secure the building and loan association.

The Court of Chancery Appeals then proceeds to state the law applicable to the facts found by them. That Court states "the bank took said notes as an innocent holder for value in due course of trade, and before their maturity, without notice of any equities against them. Under the proof it took them before maturity. It paid value for them in a sense, in that it took them

in satisfaction in part of a debt due it by Mrs. Kershner."

Said that Court: "Whether a person who receives, before maturity, negotiable paper in payment of or as collateral security for a pre-existing debt is a holder for value in the sense of the law merchant is a question on which Courts have differed. A number of cases seem to hold that he is." The Court then cites eighteen cases as sustaining that proposition. "Other cases," continues the Court, "seem to hold that he is not a holder for value, and several of our Tennessee cases point very strongly in this direction." Citing *Craighead* v. *Wells,* 8 Bax., 38; *Richardson* v. *Rice, Styx & Co.,* 9 Bax., 290. That Court again states that the complainant bank took the notes and credited their face value on the indebtedness of Mrs. Kershner to it, and then continues, viz.: "Under the authorities from this State, cited, it is a matter of grave doubt, the notes having been taken in payment of a pre-existing debt, whether the complainant bank is a holder for value in due course of trade."

We do not concur with the Court of Chancery Appeals in the doubt expressed as to the law governing this case. We are clearly of the opinion that upon the facts found the complainant bank is not a holder for value in due course of trade in the sense of the law merchant. That Court distinctly finds that these notes were taken

21 P—34

in part satisfaction of an indebtedness amounting to several thousand dollars due the bank by Mrs. Kershner. In *Craighead* v. *Wells,* 8 Bax., 38, it was held by this Court that a note taken in payment of a pre-existing debt is not received in due course of trade and is subject in the hands of the person so receiving it to all equities against it. In *Kimbro* v. *Lytle,* 10 Yer., 423, it was said: "Due course of trade is where the holder has given for the note his money, goods, or credit, or has on account of it incurred some loss or liability." So in *Richardson* v. *Rice, Styx & Co.* it was held that negotiable paper transferred as collateral security for subsisting indebtedness and future advances, is subject to all equities then existing, and the maker is protected if he has paid the note to the rightful holder before the transfer, though the transfer was before maturity. *Gosling* v. *Griffin,* 1 Pick., 738; *Ferriss* v. *Tavel,* 3 Pick., 386; *King* v. *Doolittle,* 1 Head, 77; *Anderson* v. *Douglas,* 1 Tenn. Ch., 442; *Bridges* v. *Robinson,* 2 Tenn. Ch., 725; *Rhea* v. *Allison,* 3 Head, 178; Meigs' Reports, 155; *Kimbro* v. *Lytle,* 10 Yer., 428; *Martin* v. *Bank,* 10 Pick., 176.

We are aware that this rule has been changed by Article 2, Section 35, and Article 4, Section 52 of the general Act relating to negotiable instruments, approved April 6, 1899, but the transactions herein involved occurred at a time long

anterior to the passage of said Act, and are not in any way affected thereby. What, then, are the equities against said notes?

It is insisted that the consideration of said notes had failed in this, that at the time Mrs. Kershner sold lot No. 47 to the Misses Johnston there was an outstanding mortgage on the lot, in favor of the building and loan association, for $4,000, due from Mrs. Kershner. On this subject the Court of Chancery Appeals find that Mrs. Kershner executed to them a fee simple deed covenanting that the land was unincumbered, when, in fact, the legal title was not in her, but in a trustee, to whom it had been conveyed to secure a note of hers for $4,000 to a building and loan association. That Court held that Mrs. Kershner, having no title, her covenant of seizin was broken when made, and, therefore, broken prior to the assignment of the notes executed by the Misses Johnston to the complainant bank. That Court further held that the title to the lot having failed, there was no consideration for the notes and that complainant bank was not entitled to a lien on the lot. In this holding we think the Court of Chancery Appeals was in error. In our opinion, upon the facts found by that Court, the purchase of the lot by the Misses Johnston from the building and loan association, the first mortgagee, for the consideration of $400, amounted simply to the purchase of an outstand-

ing title to perfect their own title acquired from Mrs. Kershner, and, as a matter of law, this purchase inured to the benefit of the vendor or the assignee of the party entitled under the trust deed executed by the Misses Johnston to Gaines to secure the purchase money notes. It is said, however, by the Court of Chancery Appeals, that Mrs. Kershner, the vendor of the Misses Johnston, was insolvent, and the law is, that vendees in possession may resist the payment of their purchase money notes when the title conveyed is defective or fails and their vendor is insolvent. *Buchanan* v. *Alwell,* 8 Hum., 516; *Barnett* v. *Clark,* 5 Sneed, 435; *Winfrey* v. *Drake,* 1 Lea, 293. But this rule would have no application in a case like this. When the purchaser in possession has bought in the outstanding title or removed the incumbrance and now enjoys a perfect title to the lot, the rule in such a case is, that where a vendee is in possession of land, either by deed or contract to convey, and has not been evicted, but purchases in a better outstanding title or removes an incumbrance, it inures to the benefit of the vendor or his assignee, and all the vendee can ask is to be reimbursed his outlay in obtaining the title, not exceeding the value of the land. *Austin* v. *McKinney,* 5 Lea, 488; *Callis* v. *Cogbill,* 9 Lea, 137.

The decree of the Court of Chancery Appeals will be reversed and a decree entered here in

favor of complainant for the amount due on said notes, crediting them by the sum of $400 and interest from August 5, 1895, amount paid by the Misses Johnston in removing the incumbrance on said lot or acquiring title thereto, and for the payment of this sum a lien will be declared on the lot in controversy.

The costs of the appeal will be paid by defendants.