Birket v. Elward.

---

JOHN CHARLES BIRKET v. WILLIAM A. R. ELWARD
*et al.*

No. 13,421.   (74 Pac. 1100.)

SYLLABUS BY THE COURT.

PROMISSORY NOTE— *Collateral Security—Holder for Value.*
An indorsee of a negotiable note taken as collateral security for a preexisting debt, there being no extension of time of payment or other new consideration except such as may be deemed to arise from the acceptance of the paper, is a holder for value and in due course of business, and in the absence of any circumstances charging him with notice is protected against a claim of payment made to the original payee.

Error from Reno district court; M. P. SIMPSON, judge.   Opinion filed January 9, 1904.   Reversed.

*Carr W. Taylor*, and *J. U. Brown*, for plaintiff in error.

*George A. Vandeveer,* and *F. L. Martin,* for defendants in error.

The opinion of the court was delivered by

Mason, J.: John H. Elward and William A. R. Elward, on September 25, 1894, executed to George T. Gilliam a negotiable note due in five years, and William A. R. Elward executed as security for the note a mortgage on real estate in Reno county. On June 24, 1901, John Charles Birket sued the Elwards on the note and mortgage, claiming to have acquired them by indorsement and under such circumstances as to make him an innocent purchaser. The defendants answered with a general denial which put in issue the question whether plaintiff was a *bona fide* holder, and an allegation that the note had been fully paid to Gilliam by the makers without knowledge or notice of any transfer to plaintiff. A reply was filed, consisting of a general denial.

Upon the trial plaintiff testified that he acquired the note April 28, 1896, as collateral security for a loan of $2000 made to Gilliam at that time. The evidence of defendants showed that on May 25, 1896, the Elwards executed a new note and mortgage to Gilliam in consideration of the satisfaction of the old debt and an additional loan of $500; that the old papers were surrendered to John H. Elward, who placed them in a box, which he left in the custody of Gilliam; that on June 25, 1896, a release of the first mortgage, executed and acknowledged by Gilliam, was filed for record with the register of deeds. The amount due plaintiff from Gilliam was shown to be $814. The court instructed the jury that the only question for their determination was the date at which plaintiff acquired the note; that if he acquired it before June

25, 1896 (the date of the record of the satisfaction of the mortgage), he should recover ; that otherwise the verdict should be for defendants.    The jury found specially that plaintiff acquired the note after that date, and judgment followed for the defendants, which plaintiff now seeks to reverse.

The theory upon which the trial court held the date of the recording of the mortgage release to be important is not discussed in the briefs, and is not material, since the instruction and judgment are now defended on the ground that if plaintiff took the note as collateral security for Gilliam's debt at any time after such debt was created (namely, April 28, 1896), he took it subject to any defense that could be made against the original payee.    It is obvious that plaintiff could only recover on the theory that he was an innocent purchaser, and the sole question here involved, therefore, is whether one who takes commercial paper as collateral security for an existing debt, without an agreement for an extension of time or other new consideration, is ever entitled to protection as a *bona fide* holder.    If so, the judgment must be reversed ; otherwise it must be affirmed.

The rule in the federal courts as well as in those of England and Canada is that the holder of a negotiable note taken as collateral security for a preexisting debt is a holder for value in due course of business, and as such is protected against all latent equities of third parties.    The state courts that have passed upon the question are in irreconcilable conflict.    The cases are collected in volume 4 of the American and English Encyclopedia of Law, second edition, pages 290 to 293, and in volume 7 of the Cyclopedia of Law and Procedure, pages 932 to 935.    The lists there given indicate with substantial, but not absolute, correctness

the line of cleavage.  It is to be noted that in each of them Kansas is wrongly placed among the states that are committed to the rule stated, upon the strength, respectively, of the cases of *National Bank v. Dakin*, 54 Kan. 656, 39 Pac. 180, 45 Am. St. Rep. 299, and *Best v. Crall*, 23 id. 482, 33 Am. Rep. 185.   While these cases have a tendency in that direction they do not go the full length indicated.   In *Bank v. Dakin* the note involved was transferred as collateral security for a debt created at the time of, and in reliance upon, such transfer, which was therefore supported by a new consideration sufficient upon any theory of the law.   In the opinion a number of cases are cited as supporting the proposition that even a preexisting debt would afford a sufficient consideration for the purpose, and among them was included *Best v. Crall*. In that case the collateral note was in fact transferred as security for a debt that already existed, but this was done pursuant to a promise made when such original debt was created, so that the effect was the same as though the transfer had actually been made at that time.

A careful examination of the cases cited in the lists referred to discloses that in the following states the rule of the federal courts has been adopted, although in California and Nevada the matter is affected by statutory provisions that the acceptance of the security forfeits a right to attach : California, Colorado, Connecticut, Georgia, Illinois, Indiana, Louisiana, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, Rhode Island, South Carolina, Texas, Vermont, and West Virginia.   Nebraska also is now committed to this doctrine.   (*Lashmett v. Prall*, 2 Neb. [unofficial] 284, 96 N. W. 152.)   Such citations further show that in the following states the rule has been denied : Alabama,

Arkansas, Iowa, Kentucky, Maine, Michigan, Mississippi, Missouri, New Hampshire, New York, North Dakota, Ohio, Pennsylvania, Tennessee, Virginia, and Wisconsin.   North Carolina also should now be placed in this list, but there, as well as in Tennessee and in Virginia, the recent adoption by the legislature of a complete code relating to negotiable instruments is held to have changed the rule.   (*Brooks v. Sullivan*, 129 N. C. 190, 39 S. E. 822 ; *Bank v. Johnston*, 105 Tenn. 521 ; 59 S. W. 131 ; *Payne v. Zell*, 98 Va. 294, 36 S. E. 379,) The same code was adopted in New York in 1897. Upon the strength of its provisions that "value is any consideration sufficient to support a simple contract," and that "an antecedent or preexisting debt constitutes value," it was held in *Brewster v. Shrader*, 57 N. Y. Supp. 606, that the law in this respect, as formerly administered in that state, had been changed, and that now "an indorsee of a note taken as collateral to a preexisting indebtedness is a holder for value, unaffected by equities between the original parties." But in *Sutherland v. Mead*, 80 Hun, App. Div. 103, 80 N. Y. Supp. 504, this was denied, and it was said that this part of the new statute is purely declaratory.   We do not discover that the New York court of appeals has passed on the effect of this legislation on the matter under consideration.

What may fairly be called the minority doctrine originated in New York in *Bay v. Coddington*, 5 Johns. Ch. 54, 9 Am. Dec. 268, the opinion being written by Chancellor Kent.   The leading case in this country on the majority side is *Swift v. Tyson*, 16 Pet. 1, 10 L. Ed. 865, the opinion being written by Justice Story. It was there declared that one who took negotiable paper in payment of, or as security for, a preexisting debt, was a holder for value and in due course of busi-

ness, and the argument was made in support of that express proposition. But the reference to paper taken as security was not required by the facts of the case, and Justice Catron dissented on this ground. In *Railroad Co. v. National Bank*, 102 U. S. 14, 26 L. Ed. 61, the same reasoning was adopted and applied in a case where the transfer was made merely to secure an antecedent debt. The note there involved had several indorsers and the obligation assumed by the last holder to give them notice of non-payment was treated as a part of the consideration of the transfer, but the decision did not turn upon this treatment. And in *American File Company v. Garrett*, 110 U. S. 288, 4 Sup. Ct. 90, 28 L. Ed. 149, the principle was applied where there were no prior indorsers. In the opinion in *Railroad Co. v. National Bank*, it was noted ( citing 3 Kent, 81, note *b* ) that Chancellor Kent, after the decision in *Swift v. Tyson*, indicated that he was inclined to concur in it as the plainer and better doctrine.

The cases of *Bay v. Coddington* and *Swift v. Tyson* are cited in almost every opinion in which the merits of the question under consideration are discussed, and the state courts have ordinarily taken sides upon the matter as the arguments of the one decision or the other have appealed to them with the greater force. In the former case it was said :

"It is the credit given to the paper, and the consideration *bona fide* paid on receiving it, that entitles the holder, on grounds of commercial policy, to such extraordinary protection, even in cases of the most palpable fraud. It is an exception to the general rule of law, and ought not to be carried beyond the necessity that created it."

In the latter case it was said :

"Receiving it (a negotiable instrument) in payment of, or as security for a preexisting debt, is

Birket v. Elward.

according to the known usual course of trade and business. And why upon principle should not a preexisting debt be deemed such a valuable consideration? It is for the benefit and convenience of the commercial world to give as wide an extent as practicable to the credit and circulation of negotiable paper, that it may pass not only as security for new purchases and advances, made upon the transfer thereof, but also in payment of and as security for preexisting debts. The creditor is thereby enabled to realize or to secure his debt, and thus may safely give a prolonged credit, or forbear from taking any legal steps to enforce his rights. The debtor also has the advantage of making his negotiable securities of equivalent value to cash. But establish the opposite conclusion, that negotiable paper cannot be applied in payment of or as security for preexisting debts, without letting in all the equities between the original and antecedent parties, and the value and circulation of such securities must be essentially diminished, and the debtor driven to the embarrassment of making a sale thereof, often at a ruinous discount, to some third person, and then by circuity to apply the proceeds to the payment of his debts.'' (Page 19.)

Among other arguments advanced in behalf of the majority view are these, that the question is really one of the law merchant—the custom of merchants, and that a '' transfer by a debtor to his creditor of a negotiable instrument, to pay or only to secure a prior debt, makes the creditor a holder for value by the custom '' (Big. Bills, N. & C., 2d ed., 247) ; that the creditor in accepting a negotiable note, whether or not there are parties to be charged by notice, does undertake to exercise some degree of diligence (2 Rand. Com. Paper, 2d ed., § 804), thereby affording a new consideration ; or at all events that he ''is naturally lulled into security and inactivity by crediting the face of the note ; and he should not be made to suffer by the maker for confi-

dence which his own promise created" (1 Dan. Neg. Inst., 5th ed., § 831a) ; that the true consideration for the transfer is the debt due from the indorser to the indorsee and the obligation to pay or secure said debt ; that such transfer is a sufficient consideration, because "security for the payment of a debt actually owing is a good consideration, and sufficient to support a transfer of property." (*Railroad Co. v. National Bank*, supra.)    That the policy of the law is to facilitate the transfer of negotiable paper free of equities is illustrated by the fact that it is almost universally held that one who acquires it in payment of an antecedent debt is a *bona fide* holder (*Draper v. Cowles*, 27 Kan. 484 ; 4 A. & E. Encycl. of L., 2d ed., 285) ; whereas the ordinary rule in reference to protection under recording acts is that one who accepts property in satisfaction of an existing debt is not an innocent purchaser. (23 A. & E. Encycl. of L., 2d ed., 490 ; *Dolan, Sheriff, v. Van Demark*, 35 Kan. 304, 10 Pac. 848 ; *Henderson v. Gibbs*, 39 id. 679, 18 Pac. 926.)    Even where the New York doctrine is accepted an exception is made against the plea of lack of consideration when made by an accommodation party to the paper transferred as security.    (*Grocers' Bank v. Penfield et al.*, 69 N. Y. 502, 25 Am. Rep. 231 ; *Maitland v. The Citizens' Natl. Bank of Balto.*, 40 Md. 540, 17 Am. Rep. 620 ; *Smith v. Hine, Appellant*, 179 Pa. St. 260, 36 Atl. 221.)

If the question were a new one, to be determined upon the consideration of equitable principles, there would be strong reasons for holding that he who takes a note merely as security for an existing debt acquires no greater right than his debtor had. The reasons given in *Mann v. National Bank*, 30 Kan. 412, 1 Pac. 579, for applying this rule to a bank that receives a note from a depositor and adds the amount to

his account, which is not overdrawn, would seem to apply to the case of one who receives the paper as collateral for an indebtedness already existing.   He parts with nothing, and is in no worse situation than he was before.   It requires no variation of usual procedure to save him from loss.   But on the other hand, the same arguments would reach the case of him who takes commercial paper in payment of an existing unsecured debt.   He likewise is in no way placed in any worse situation than he was before, since while the original debt may be regarded as technically canceled, he at all events has his remedy upon the collateral against the person from whom he received it, whatever defense might be available to the maker.   He still has a valid claim against his original debtor, and that is all he had in the first place.   ( 1 Rand. Com. Pap. §§ 461–465.)   Yet, as has just been said, one acquiring commercial paper under such circumstances is held to be protected as an innocent purchaser.

But the question before us is peculiarly one in which great weight should be given to the authorities, and especially to the decision of the courts of the national government, which do not recognize any local law in such matters.   (*Oates v. National Bank*, 100 U. S. 239, 25 L. Ed. 580.)   The question is one likely to arise frequently in transactions between inhabitants of different states.   It is important that the law be uniform in the different jurisdictions.   The recognition of this consideration prompted the effort at codification of the law of negotiable instruments which resulted, as already noted, in a reversal of policy in North Carolina, Tennessee, and Virginia, and perhaps in New York.   Of this effort it is said, in a book review in 38 American Law Review, pages 150, 151:

"In December, 1895, a draft of an act was prepared

by Mr. John J. Crawford, of the bar of New York city, and was reported to the meeting of the New York board of commissioners for promoting uniformity of legislation, which sat at Saratoga in 1896. Then, after consultation with the state board, with the committee of the American Bar Association on commercial law, and after consideration by that association, it was revised and finally adopted. . . . It has been adopted by the legislatures of twenty-two states of the Union, if we include the District of Columbia, the legislature of which is the Congress of the United States.''

We prefer to hold in accordance with the weight of authority that an indorsee of negotiable paper taken as security for a preexisting debt is a holder for value and in due course of business, and therefore, in the absence of any circumstances charging him with notice, is protected against a claim of payment made to the original payee.

It is to be noted that the petition in this case alleges that the note in question was indorsed by Gilliam to plaintiff. This statement was not denied under oath and was therefore not put in issue. The record shows that the note with all indorsements was offered in evidence as a part of plaintiff's deposition, but the purported copy does not show any indorsement. In the state of the pleadings this is not material, but of course, if the note was not actually indorsed by Gilliam, plaintiff was not in fact a *bona fide* holder.

The judgment is reversed and the cause remanded for a new trial.

All the Justices concurring,