HAMILTON et ux. v. FOWLER et al.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1899.)

No. 717.

1. PROMISSORY NOTES—RIGHTS OF TRANSFEREE—BONA FIDE HOLDER.

The transfer of negotiable obligations as security for an antecedent debt is as much in the usual course of business as their transfer in payment of a debt, and in neither case is the bona fide holder affected by equities between prior parties of which he had no notice.

2. SAME—NOTES SECURED BY REAL-ESTATE MORTGAGE.

By the indorsement of notes secured by mortgage on real estate as collateral security to debenture bonds issued by the indorser the transferees become bona fide holders for value, and entitled to all the protection extended to any other bona fide holder of commercial paper against defenses between the original parties of which they had no notice.

3. SAME—INDORSEMENT WITHOUT RECOURSE.

That a note is indorsed "Without recourse" does not affect its negotiability nor operate as a notice of defenses.

4. FOREIGN CORPORATIONS—BUSINESS DONE IN VIOLATION OF STATUTE—VALIDITY OF NOTES TAKEN.

The Tennessee statute (Acts 1891, c. 122) requiring foreign corporations doing business in the state to record their charters with the secretary

of state and in each county where they do business, and making it unlawful for such corporations to do business in the state without having complied with its requirements, does not declare that negotiable notes made in the course of a business carried on in violation of its provisions shall be void in the hands of bona fide holders for value without notice of their illegality, nor is it to be so construed; and, where such a note appears on its face to be a contract made in another state, a holder who acquired it for value before maturity is not charged with notice that it grew out of a transaction within the prohibition of such statute, although it is secured by a mortgage on real estate in Tennessee.

5. MORTGAGE—DEFENSES—BONA FIDE PURCHASER OF NOTE SECURED.

Where the maker of a negotiable note cannot defend against the same in the hands of a transferee by showing the illegality of the consideration, he is equally debarred from resisting the enforcement of a mortgage given to secure it, which passed as a mere incident to the transfer of the debt.

6. USURY—EFFECT UPON NOTE—BONA FIDE PURCHASER.

Where a usurious note is not made void by statute, but is voidable only to the extent of the usury included therein, an innocent purchaser for value, before maturity and without notice, is unaffected by the fact that an unlawful rate of interest is secretly included as principal.

7. SAME—LAW GOVERNING—PLACE OF CONTRACT.

A note which purports on its face to have been made in Missouri, and is there payable, is a Missouri contract, and governed by the law of that state as to usury, although the makers reside in another state, and the note is secured by a mortgage on real estate situated in such state where the note and mortgage were in fact executed.

8. PROMISSORY NOTES—NEGOTIABILITY—PROVISION FOR ATTORNEY'S FEES IN MORTGAGE.

A provision in a mortgage for the payment of attorney's fees in case of foreclosure does not affect the negotiability of the note secured, even where, under the law of the state, it would have had that effect if contained in the note itself.

9. DEED—CONSTRUCTION—ESTATE CONVEYED.

A deed conveying all the right, title, and interest of the grantor in real estate to a husband and wife, "to have and to hold * * * as joint tenants during the period of their natural lives," upon the death of either the said real estate "to be and become the property in fee simple absolute of the survivor of them," does not convey merely a joint life estate to the grantees, but vests the fee in them jointly.

10. SAME—POWER TO CONVEY—MORTGAGE.

A provision, in a deed of real estate to a husband and wife, that "during their natural lives the same may be conveyed by their joint deed," if treated as a power only, and not as a statement of the character of the title conveyed, is sufficient to support a mortgage made by the husband and wife jointly.

11. MORTGAGE—FORECLOSURE—TERMS OF SALE.

In Tennessee, where, by statute, the right of redemption does not extend to a sale made under a power in a mortgage, wherein the right of redemption is waived, where such a mortgage is foreclosed by suit, the court may order a sale without redemption in accordance with the terms of the mortgage.

12. SAME—SALE—ADVERTISEMENT.

A provision in a mortgage authorizing the trustee, in case of default, to sell "after having advertised such sale 30 days in a newspaper," does not require 30 consecutive advertisements, but that the sale shall not be made until 30 days after the first advertisement, and is satisfied by a publication each week for four successive weeks.

13. SAME—ELECTION OF REMEDIES.

Where, in a suit by mortgagors to restrain a sale of the mortgaged property by the trustee under a power of sale in the mortgage, the mortgagees file a cross bill, asking a foreclosure by the court, they cannot

complain that the court treated such cross bill as an election of remedies, and, upon granting the relief prayed for therein, enjoined them from proceeding under the power of sale.

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

The original bill was filed by Thomas A. Hamilton and his wife, Elizabeth H. Hamilton, in the chancery court for Shelby county, Tenn., for the purpose of enjoining the sale of certain premises situated in that county under a power of sale contained in a mortgage made by the complainants to secure a certain promissory note theretofore made by them to the Jarvis-Conklin Mortgage Trust Company, a corporation of the state of Missouri, whose principal office was at Kansas City. The note aforesaid was in these words:

"Mortgage Bond.

"United States of America.

| "Number. | | 'Dollars. |
|---|---|---|
| "One. | Real-Estate Mortgage. | $10,000.00. |

"Coupon Bond.

| "Secured by | . Six Per Cent. |
|---|---|
| . "First Mortgage. | Semiannually. |

"Negotiated by Jarvis-Conklin Mortgage Trust Co., Kansas City, Mo.

"Five years after date, for value received, we promise to pay to the order of the Jarvis-Conklin Mortgage Trust Co., at its office in Kansas City, Mo., ten thousand ($10,000.00) dollars lawful money of the United States, with interest thereon at the rate of six per cent. per annum, payable semiannually on the first days of January and July in each year, according to the tenor and effect of the interest notes of even date herewith, and hereto attached. This note is to draw interest from date at the rate of six per cent. per annum if either principal or interest remain unpaid ten days after due. At the option of the legal holder, after any of said interest notes remain due and unpaid ten days, the whole of the principal and interest may be declared immediately due and payable. This note is given for an actual loan of the above amount, and is secured by a trust deed of even date herewith, which is a first lien on the property therein described.

"Dated at Kansas City, Mo., July first, 1891.

"Thos. A. Hamilton.
"Elizabeth H. Hamilton.

"Witness: W. A. Smith."

Relief against the sale was sought mainly upon the ground that the note was for money loaned in Tennessee by a foreign corporation engaged in doing business in Tennessee without having first complied with the Tennessee statute requiring foreign corporations, before carrying on business in the state, to record their charters, and the note and mortgage therefore void. Other objections to the right of the trustee to enforce the mortgage were also urged, which will be hereafter stated. A stay order was granted by the chancellor. Thereafter the defendants removed the cause to the circuit court of the United States for diversity of citizenship. The defendants Fowler and Caesar then answered, and, after denying the averments of the bill, averred that they were bona fide purchasers of the note secured by the mortgage before maturity, for value, and without notice of any of the infirmities alleged, if they in fact existed. Later the same defendants filed a cross bill, and sought a foreclosure of the mortgage by a sale under decree. Upon final hearing the issues were decided for Messrs. Fowler and Caesar, the note and mortgage were held valid, and a decree settling the amount of the debt due and ordering foreclosure by sale, as prayed by the cross bill, was granted, but enjoining the trustee from proceeding with the sale theretofore advertised. 83 Fed. 321.

Wm. M. Randolph, for appellants.
Thomas M. Scruggs, for appellees.

Before TAFT, LURTON, and DAY, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

Hamilton and wife have appealed from the decree upon the cross bill, and Fowler, Caesar, and Maxwell have appealed from the decree enjoining a foreclosure by sale by Maxwell as trustee under the mortgage. The Tennessee act of 1891, c. 122 (Acts Tenn. 1891, p. 264), provides that all foreign corporations proposing to carry on business in Tennessee shall record their charters with the secretary of state, and in each county in which it is proposed to do business, and that "it shall be unlawful for any foreign corporation to do or attempt to do any business or to own or acquire any property in this state, without having first complied with the provisions of this act, and a violation of this statute shall subject the offender to a fine, of not less than $100, or more than $500, at the discretion of the jury trying the case." Though this act does not, in express terms, declare void the contracts of corporations doing business within the state in violation thereof, yet it is well established by the Tennessee decisions that every contract made in the state by a foreign corporation doing business within the state, not having complied with the law, is unenforceable as between the parties thereto. Cary-Lombard Lumber Co. v. Thomas, 92 Tenn. 587, 22 S. W. 743; Association v. Cannon, 99 Tenn. 344-348, 41 S. W. 1054. These cases are in accord with a line of earlier decisions of the state holding that every contract made in the conduct of a business, or for or about a business which is prohibited and made unlawful, is, by implication, void, and unenforceable. Wetmore v. Brien, 3 Head, 723; Stevenson v. Ewing, 87 Tenn. 46, 9 S. W. 230; Haworth v. Montgomery, 91 Tenn. 17-19, 18 S. W. 399. But the Tennessee act has no application to interstate commerce, and a mortgage to secure the price of mill machinery sold by an Indiana corporation and set up on realty in the state was held valid and enforceable, although the corporation had not complied with the Tennessee law; the court holding that a contract made outside of the state was not within the prohibition of the statute, and that a mortgage on lands in the state was not a carrying on of business within the state under the statute. Manufacturing Co. v. Gorten, 93 Tenn. 590, 27 S. W. 971, 26 L. R. A. 135. In Neal v. Association, 100 Tenn. 607, 46 S. W. 755, the court held that a contract for the loan of money by a foreign corporation having no office or agency in the state, made direct from its home office in Louisiana, and secured by a mortgage on land in Tennessee, was a Louisiana contract, and that same was valid and enforceable. The question as to whether the Jarvis-Conklin Mortgage Trust Company was at the time of the transaction with Hamilton and wife carrying on business within the state, or whether the loan to Hamilton and wife was in fact a loan negotiated and made in Tennessee, is not material in view of the fact that the appellees Fowler and Caesar are bona fide purchasers of the note made by Hamilton and wife, for value, and before maturity, and without notice that it had been made in the course of a prohibited business.

The note purports on its face to have been made at Kansas City, Mo., and is there made payable. It is true that it recites that it is. secured by a mortgage upon land in Tennessee. But neither the fact that the note was secured by a mortgage upon realty situated in that state, nor that the mortgage was acknowledged there before a Tennessee notary, operates to make the note a Tennessee contract, nor to require the purchaser thereof to make further inquiry. The note purports to be a Missouri contract, and is payable to a Missouri corporation. This note, before maturity, was indorsed in blank by the payee to Messrs. Lubbock & Lubbock, London bankers, as security for certain debenture bonds theretofore or then issued, which does not clearly appear, and negotiated for value by the Jarvis-Conklin Mortgage Trust Company. Default was thereafter made in the payment of interest on those bonds, and this note, with others held as collateral security, were, by the terms of the trust under which they were held, forfeited, and by a decree of an English court of competent jurisdiction, delivered to Messrs. Fowler and Caesar as trustees for the debenture bondholders. It is immaterial whether these bonds were originally issued upon the security of this and other notes, or that they were subsequently assigned to secure them.. The transfer of negotiable obligations as security for an antecedent debt is as much in the usual course of business as its transfer in the payment of the debt. In neither case is the bona fide holder affected by the equities between prior parties of which he had no notice. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; McCarty v. Roots, 21 How. 432, 438, 439, 16 L. Ed. 162; Brooklyn City & N. R. Co. v.. National Bank, 102 U. S. 14–28, 26 L. Ed. 61.

Counsel for the mortgagors have placed much reliance upon Bank v. Bates, 120 U. S. 556, 7 Sup. Ct. 679, 30 L. Ed. 754, as in some way affecting the status and title of Messrs. Fowler and Caesar. But that case presented only the question as to whether the position of a mortgagee under a chattel mortgage made to secure a pre-existing debt was identical with that of one who took negotiable paper before maturity, and without notice of defenses, as collateral security for an antecedent debt. The court declined to extend to such a mortgagee the doctrine of Brooklyn City & N. R. Co. v. National Bank, cited above. Touching the distinction between the two cases, the court said:

"The rules established in the interest of commerce to facilitate the negotiation of mercantile paper, which, for all practical purposes, passes by delivery as money, and is the representative of money, ought not, in reason,. to embrace instruments conveying or transferring real or personal property as security for the payment of money. At any rate, there is nothing in the usages of merchants, as shown in this record, or so far as disclosed in the adjudged cases, indicating that the necessities of commerce require that chattel mortgages be placed upon the same footing in all respects as negotiable securities which have come to the hands of a bona fide holder for value, before their maturity. Such a result, if desirable, must be attained by legislation, rather than by judicial decisions."

By the indorsement of the notes of Hamilton and wife to Lubbock & Lubbock as collateral security to debenture bonds of the indorser, the holders of such bonds became bona fide holders for value, and

are entitled to all the protection extended to any other bona fide holder of commercial paper acquired before maturity, and without notice of defense between the original parties. That the note was indorsed "Without recourse" neither affected its negotiability nor operated as notice of defenses. Story, Bills, § 214; 1 Daniel, Neg. Inst. (3d Ed.) p. 627; Rand. Com. Paper, § 722.

2. The purchaser, before maturity, of this note had a right to assume that this note was what it purported to be, a Missouri contract, and was, therefore, unaffected by any law of Tennessee prohibiting the Missouri payee from doing business in Tennessee without first complying with the Tennessee law. This is the appearance which the makers of the note gave to the transaction on its face, and they should not be heard to deny that appearance as against one who became a holder for value, before maturity, and without notice. The Tennessee statute does not declare that negotiable notes made in the course of a business carried on in Tennessee in violation of the statute shall be void in the hands of a bona fide holder for value, without notice of its illegality.

In the case of Lauter v. Trust Co., decided by this court, and reported in 54 U. S. App. 49–51, 29 C. C. A. 473, 85 Fed. 894, we had to consider the attitude of an indorsee of a negotiable note made for money loaned in Tennessee by this same mortgage company while engaged in carrying on business in that state without compliance with the statute requiring foreign corporations to register their charters. The note there in question purported to have been made at Kansas City, Mo., and was there made payable. It was secured by a mortgage upon lands in Tennessee. The indorsee of the note acquired it before maturity, for value, and without notice that the note was made in the conduct of a business carried on in Tennessee contrary to the prohibition of the statute. A decree enforcing the mortgage was affirmed. In that case we said:

"The general and well-settled rule in favor of negotiable paper is that an innocent purchaser for value, before maturity, is unaffected by the fact that the consideration was illegal, and the note void and unenforceable by one having notice of the facts. If the illegality of the consideration results from a statute merely prohibiting a business or imposing a penalty, but does not declare a note or bill based upon such a prohibited transaction absolutely null and void, a bona fide holder of such paper will be protected. * * * There are few exceptions to this general rule, mainly dependent upon statutes against usury and gaming. The Tennessee statute relied upon as making this note void contains no provision either expressly or impliedly declaring a note made in the course of such a prohibited business void in the hands of an innocent holder for value."

In support of the doctrine upon which we decided the case we cited: 1 Daniel, Neg. Inst. (4th Ed.) §§ 197, 198; 2 Rand. Com. Paper, § 559; Farmers' Nat. Bank of Valparaiso v. Sutton Mfg. Co., 6 U. S. App. 312–334, 3 C. C. A. 1, 52 Fed. 191, 17 L. R. A. 595; Williams v. Cheney, 3 Gray, 215; Cazet v. Field, 9 Gray, 329; Converse v. Foster, 32 Vt. 828; Bank v. Thompson, 42 N. H. 369; Vallett v. Parker, 6 Wend. 615; Vinton v. Peck, 14 Mich. 287; Lacy v. Sugarman, 12 Heisk. 354–364. To these authorities we may add: 4 Am. & Eng. Enc. Law (2d Ed.) p. 192, and cases there cited; and Press

Co. v. City Bank of Hartford, 17 U. S. App. 213, 7 C. C. A. 248, 58 Fed. 321, where the same question arose under a Pennsylvania statute similar to the Tennessee act of 1891. Neither does the fact that the mortgage made to secure the note was a Tennessee mortgage subject it to defenses which cannot be made against the note. The mortgage is a mere incident to the note, and the benefit of the security passed to the indorsee the note without any specific assignment of the mortgage. Clark v. Jones, 93 Tenn. 639, 27 S. W. 1009; Graham v. McCampbell, Meigs, 57; Cleveland v. Martin, 2 Head, 128; Trust Co. v. Smythe, 94 Tenn. 513, 29 S. W. 903, 27 L. R. A. 663. In the latter case Chief Justice Snodgrass, after an able and comprehensive review of the authorities, announced for the court the conclusion that "the assignment of negotiable paper carries with it the security of the mortgage, and is unaffected by the equities between the mortgagor and mortgagee." To the same effect are the cases of Carpenter v. Longan, 16 Wall. 271, 21 L. Ed. 313, and Kenicott v. Supervisors, 16 Wall. 452, 21 L. Ed. 319. It therefore follows that, if the makers of the note could not, as against the present holders thereof, defend by showing the illegality of the consideration, they are equally debarred from resisting the enforcement of the mortgage, which, as a mere security, passes with the debt as an incident. Manufacturing Co. v. Gorten, cited above.

3. The next objection is that the note includes usury to the extent of $1,000. This does not appear on the face of the note, which, on its face, recites that it "is given for an actual loan of the above amount." The present holders, being bona fide purchasers without notice of the inclusion of unlawful interest, are protected against such a defense. Neither the Tennessee nor Missouri statutes made a contract absolutely void where the unlawful interest does not appear upon the face of the instrument. Section 3499, Shannon's Code Tenn.; Causey v. Yeates, 8 Humph. 605; Rev. St. Mo. 1879, §§ 2726, 2727; Montany v. Rock, 10 Mo. 506; Long v. Long, 141 Mo. 352, 44 S. W. 341. Where the note is not made void by the statute, and is voidable only to the extent of usury included, an innocent purchaser for value, before maturity, and without notice, is unaffected by the fact that an unlawful rate of interest is secretly included as principal. Ramsey v. Clark, 4 Humph. 244; Bradshaw v. Van Valkenburg, 97 Tenn. 316, 37 S. W. 88; Fleckner v. Bank, 8 Wheat. 338, 355, 5 L. Ed. 631; McBroom v. Investment Co., 153 U. S. 318–325, 14 Sup. Ct. 852, 38 L. Ed. 729; Tilden v. Blair, 21 Wall. 241–248, 22 L. Ed. 632; Norris v. Langley, 19 N. H. 423; Converse v. Foster, 32 Vt. 828.

4. The provision of the note on its face that "this note is to bear, interest from date at the rate of six per cent. per annum if either principal or interest remain unpaid ten days after date," was probably meant to provide for interest only from date of maturity, inasmuch as the note, by another provision, bore same interest from date, and had interest coupons attached. But, if intended to make the note bear 12 per cent. from date to maturity as a penalty for failure to pay at maturity, it would be usurious, and unenforceable, under the construction given to the Tennessee usury statute by the

supreme court of that state. Richardson v. Brown, 9 Baxt. 242; Bang v. Mill Co., 96 Tenn. 361, 34 S. W. 516. This construction of local usury statute is authoritative in a court of the United States in respect to a Tennessee contract. Trust Co. v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474. But the note here involved was a note dated at Kansas City, Mo., and was there made payable. The parties had a right to contract with reference to the law of the state of Missouri, although the payors of the note were citizens and residents of Tennessee. It is, therefore, a Missouri contract, and governed by the law of Missouri in respect to usury. Brown v. Gardner. 4 Lea, 145; Hubble v. Improvement Co., 95 Tenn. 585, 32 S. W. 965; Coghlan v. Railroad Co., 142 U. S. 101, 12 Sup. Ct. 150, 35 L. Ed. 951. Under the law of Missouri a contract is not void even though it carry interest upon its face at an unlawful rate. It is voidable only as to the excess of interest. Long v. Long, 141 Mo. 352–374, 44 S. W. 341. Stipulations providing that an obligation shall draw after maturity a greater rate of interest than permitted by statute are generally regarded as penalties to induce prompt payment, a penalty which the debtor may avoid by paying when due, and, therefore, not usurious. Lloyd v. Scott, 4 Pet. 205, 7 L. Ed. 833; Sumner v. People, 29 N. Y. 337; Cutler v. How, 8 Mass. 257; Floyer v. Edwards, Cowp. 112; Rogers v. Sample, 33 Miss. 310; Chaffe v. Landers, 46 Ark. 364. This, however, is an academic question, and need not be decided. The utmost effect of the Missouri statute would be to make only the stipulation invalid. The court below did not enforce it, and the appellees do not assign error upon the decree.

5. It is next assigned as error that the court below included in the debt payable out of the proceeds of the mortgaged property a solicitor's fee of $1,000. The mortgage expressly provided that out of the proceeds of sale of the mortgaged property such fee should be paid if any suit should be instituted for the collection of the debt secured therein, and that a judgment for said sum should go in favor of the trustee. This provision was valid under both the law of Tennessee and Missouri. Oppenheimer v. Bank, 97 Tenn. 19, 36 S. W. 705, 33 L. R. A. 767; Bank v. Gay, 63 Mo. 33; Samstag v. Conley, 64 Mo. 477; Bank v. Marlow, 71 Mo. 618. The provision in respect to the fee is definite and certain, and is included in the mortgage only. This note does not affect the negotiability of the note, as no such provision is found in the note itself, even if its presence there would render the note nonnegotiable under the law of Missouri.

6. It is next assigned as error that the court below did not construe the mortgage as conveying only the joint life estate of Thomas A. Hamilton and his wife, Elizabeth H. Hamilton. The mortgage purports to convey the fee, and contains the usual covenants of seisin and warranty, and it is a little difficult to understand how appellants are affected if, in fact, their estate was less than the fee. The contention, however, is that Henry F. Dix, the immediate vendor of Hamilton and wife, conveyed to them only an estate for their joint lives, and that the fee remains in Dix, who did not join in the mortgage, and will pass to the survivor of the joint life tenants unaffected by the mortgage. Waiving the question as to whether the fee would

not pass when it shall vest in the survivor, and thus feed the warranty if this contention was true, we are of opinion that the fee did pass under Dix's deed, and that it vested in Hamilton and wife as tenants by the entirety. The granting clause could not be more specific or full. It is as follows: "Doth hereby bargain, sell, release, remise, and quitclaim and convey unto the said Thos. A. Hamilton and Elizabeth H. Hamilton all his right, title, and interest in and to," etc. When land is conveyed to husband and wife, they take but one estate, being deemed as one person in law, and both are seised of the entirety. If one die, the estate continues in the survivor. Nothing passes on the death of either husband or wife, but by a condition in law the longest liver takes the entire estate. This has been the common law for ages, and is the well-settled law of Tennessee. 2 Bl. Comm. 182; Co. Litt. 187b, 2; Taul v. Campbell, 7 Yerg. 319; Johnson v. Lusk, 6 Cold. 116. If the deed had stopped here, counsel concede that the fee would have passed to the grantees, but they say that the broad language of the granting clause is cut down by the habendum clause, which is as follows:

"To have and to hold the aforesaid land, with all and singular the hereditaments and appurtenances of and to the same or in any wise appertaining, to the said Thomas A. Hamilton and Elizabeth H. Hamilton as joint tenants during the period of their natural lives, and upon the death of said Thos. A. Hamilton or Elizabeth H. Hamilton then the said real estate is to be and become the property in fee-simple absolute of the survivor of them. During their natural lives the same may be conveyed by their joint deed."

This was obviously but an attempt to define an estate by entireties, erring only, if at all, in using words which, by a strained construction, might imply that upon the death of one of the grantees something would pass to the survivor which had not theretofore vested. In a sense this is so. During the life of husband and wife the entire estate vests in them jointly, as it would in a corporation. Upon the death of one, by a condition of law the survivor is seised singly. The provision that during the lives of both the property might be conveyed by their joint deed was not intended as a power, but is a statement of the character of the title, and, in connection with the whole of the deed, plainly indicates the intent to vest in the grantees a joint estate in fee. If any doubt existed as to the vesting of the fee in Hamilton and wife as tenants by entireties, it should be solved by section 3672 (Shannon's Code Tenn.) which provides that:

"The term 'heirs' or other words of inheritance, shall not be requisite to create or convey an estate in fee, and every grant or devise of real estate, or any interest therein, shall pass all the estate or interest of the grantor or devisor, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms of the instrument."

But, if in error as to this, the deed from Dix expressly provides that "during their natural lives the same may be conveyed by their joint deed." If we treat this as a power only, it is plainly sufficient to support a mortgage of the entire estate. The power to a married woman to dispose of property by deed includes "the power to incumber or charge as the greater includes the less." Steifel v. Clark, 9 Baxt. 466; Williams v. Whitmore, 1 Tenn. Cas. 239.

7. It is next assigned as error that the court erred in decreeing a sale for cash in bar of the right of redemption. The mortgage provided that the trustee, in event of default, might, "after having advertised such sale 30 days in a newspaper published in the county where the premises are situated," sell the property for cash, free from the right of redemption. In Tennessee the right of redemption does not extend to a sale made under a power in a mortgage wherein the right of redemption is waived. Shannon's Code Tenn. § 3812. The power of the court to enforce the mortgage by a sale under its decree in accordance with the power contained in the instrument cannot be denied. A sale for cash free from redemption was, therefore, not error. Knox v. McClain, 13 Lea, 197. The court pursued the terms of the power of sale by ordering the sale to be made "after giving 30 days' notice of the time, place, and terms of sale by advertisement in the Evening Scimitar once a week for four successive weeks." The requirement that the trustee should sell "after having advertised such sale 30 days in a newspaper" does not mean 30 consecutive advertisements, but that the sale shall not be made under 30 days after the first advertisement. The decree provides for four advertisements, and thus required more insertions than demanded by the power.

8. The defense of res judicata is not made out. The former record is not filed, and no proof was taken to support the plea. The appellants must, therefore, rely upon the admissions of the answer to the amended bill of complainants. The answer shows that the former suit was filed before maturity of the principal, and upon a default in payment of interest. This interest was paid, and the bill by agreement dismissed. This was no bar to another suit on maturity of the principal.

Other assignments of error by Hamilton and wife have been examined. They are not well taken, and the decree, so far as involved by the appeal of Hamilton and wife, is without error, and is affirmed.

The cross appeals of Fowler and Caesar and Maxwell from the decree perpetuating the injunction restraining a sale by the trustee must be dismissed. The cross appellants did not ask for leave to dismiss their cross bill, but proceeded with it, and took, according to its prayer, a decree for the foreclosure of their mortgage by a sale under the direction and order of the court. This the learned judge below regarded as an election between two remedies. Inasmuch as the court taxed the costs of both the original and cross bill to Hamilton and wife, and gave to the cross appellants the full relief asked by their cross bill, we can see no reason for complaining that the court enjoined them from proceeding with the remedy by a sale by the trustee under the power of sale in the mortgage. This was an election to resort to the court for a foreclosure decree, and it was not error to enjoin the trustee's sale.

The appellants Hamilton and wife will pay two-thirds of the cost, and the cross complainants Fowler and Caesar the remainder.