MELTON et al. v. PENSACOLA BANK & TRUST CO.

(Circuit Court of Appeals, Sixth Circuit.    July 12, 1911.)

No. 2,115.

1. TRIAL (§ 177*)—APPEAL AND ERROR (§ 866*)—REVIEW—SCOPE—EFFECT OF JOINDER IN REQUEST FOR DIRECTED VERDICT.

Motions by both parties to an action at law for a directed verdict, unaccompanied by requests for specific instructions in case the motion should be denied, amount to an admission by each party that there is no conflict in the evidence and no question for the jury, and to a request to the court to find the facts and direct a verdict accordingly; and where it has done so each party is estopped from assailing its finding upon disputed issues of fact, and is limited in the appellate court to a review of the question whether there was any substantial evidence, not inconsistent with the undisputed evidence in the case, upon which to support the verdict as directed under the issues presented by the pleadings.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 400; Dec. Dig. § 177;* Appeal and Error, Cent. Dig. §§ 3467, 3475; Dec. Dig. § 866.*]

2. BILLS AND NOTES (§ 489*)—ACTIONS—ISSUES—ADMISSIONS IN ANSWER.

In an action on a promissory note by one claiming to be a purchaser, an admission in the answer that the note had been indorsed by the payee is a waiver of proof of such indorsement.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 489.*]

3. BILLS AND NOTES (§ 525*)—ACTIONS—EVIDENCE OF BONA FIDE PURCHASE.

In an action on a promissory note by one claiming to be an innocent purchaser, the production of the note by the plaintiff, properly indorsed by the payee, makes out a prima facie case that plaintiff had become its holder for value, before maturity, in the usual course of business, and without notice of anything to impeach the title.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1832-1839; Dec. Dig. § 525.*]

4. BILLS AND NOTES (§ 358*)—BONA FIDE PURCHASER—TRANSFER AS SECURITY FOR ANTECEDENT DEBT.

Under the rule of the federal courts, a transfer of a negotiable note by indorsement before maturity as security for an antecedent debt is a transfer for value in due course of business.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 913-923; Dec. Dig. § 358.*]

5. BILLS AND NOTES (§ 363*)—BONA FIDE PURCHASERS—TITLE AND RIGHTS ACQUIRED.

A bona fide holder of a negotiable instrument, who, for a valuable consideration, without notice of facts which impeach its validity between antecedent parties, took it by indorsement before its maturity, holds the title unaffected by these facts, and may recover thereon, although as between the antecedent parties the transaction may be without legal validity.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 790, 791; Dec. Dig. § 363.*]

6. PLEDGES (§ 30*)—RIGHT OF ACTION—PLEDGEE.

A pledgee by indorsement of a negotiable note held as collateral may maintain an action at law thereon in his own name.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 75-85; Dec. Dig. § 30.*]

7. BILLS AND NOTES (§ 378*)—DEFENSES AGAINST BONA FIDE PURCHASERS—ALTERATION.

Where a note was made on a printed blank giving the name of a bank as the place of payment, which bank to the knowledge of most, if not all,

of the makers, had previously changed from a state to a national bank, changing its name, but continuing in business in the same building, the fact that the name of such bank was correspondingly changed in the note after its execution, without the knowledge of the makers, did not constitute a material alteration, which invalidated the note in the hands of a bona fide holder.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 378.*]

8. BILLS AND NOTES (§ 368*)—DEFENSES AS AGAINST BONA FIDE PURCHASER—EXECUTION IN BLANK.

That a note was blank as to the name of the payee when signed, and was filled in by the person to whom it was delivered, does not impeach its validity in the hands of a bona fide purchaser without notice.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 368.*]

9. BILLS AND NOTES (§ 153*)—NEGOTIABILITY—MAKER AS PAYEE—KENTUCKY STATUTE.

Under Negotiable Instruments Act Ky. (Acts 1904, c. 102) § 8, the fact that one of the makers of a promissory note is also the payee does not destroy its validity as a negotiable instrument.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 153.*]

10. APPEAL AND ERROR (§ 918*)—REVIEW—PRESUMPTIONS—AMENDMENT OF PLEADINGS.

The petition in an action by a bank on a promissory note stated plaintiff's right of recovery as that of a pledgee of the note before maturity, and there was evidence tending to support such claim. After the trial plaintiff by leave of court filed an amendment alleging that the payee of the note had pledged the same to another as collateral to a note of his own, and that while an officer of plaintiff he had, without authority, paid his note with funds of plaintiff. Held, that such amendment could not be considered by an appellate court as an abandonment of the original cause of action, especially where it was not so treated by the trial court, nor by the parties therein.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 918.*]

11. BANKS AND BANKING (§ 116*)—NOTICE TO OFFICER AS AFFECTING CORPORATION—BANK CASHIER.

Where the cashier of a bank pledged notes with such bank as collateral security for his own indebtedness, the bank is not chargeable with his knowledge of any infirmity in such notes.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 282–287; Dec. Dig. § 116.*

Knowledge or notice acquired by officer or agent of bank, in private business or outside scope of duties as affecting its liability, see note to McCalmont v. Lanning, 84 C. C. A. 139.]

In Error to the Circuit Court of the United States for the Western District of Kentucky.

Action at law by the Pensacola Bank & Trust Company against R. E. Melton, J. S. Thornsberry, J. B. Ramsey, J. R. Ramsey, E. J. Ramsey, C. H. Ramsey, and D. H. Sharp. Judgment for plaintiff, and defendants bring error. Affirmed.

Sweeney, Ellis & Sweeney (J. W. Powell, of counsel), for plaintiffs in error.

John B. Baskin (R. A. Miller, Robt. S. Todd, and Blount & Blount & Carter, of counsel), for defendant in error.

Before SEVERENS and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

SANFORD, District Judge. This is an action at law brought by the Pensacola Bank & Trust Company, a Florida corporation, against R. E. Melton and other plaintiffs in error, all citizens of Kentucky, on a promissory note for $5,467.50, together with another note for $5,000.00, as to which the plaintiff was subsequently permitted to dismiss the suit without prejudice and which is not now involved. There was a trial by jury. At the conclusion of all the evidence each side moved the Court for peremptory instructions in its favor. The defendants' motion was overruled, and under peremptory instructions from the Court the jury returned a verdict in favor of the plaintiff and against the defendants for the amount of the note remaining in suit, with interest. Judgment was rendered on this verdict; and the defendants' motion for new trial having been overruled they have brought this writ of error to review the judgment.

[1] First. The defendants have assigned various errors to the action of the trial court in overruling their motion for peremptory instructions, in not submitting the case to the jury to pass upon the facts, and in directing a verdict in the plaintiff's favor. In the court below the defendants excepted to the action of the court in overruling their motion for peremptory instructions, but did not except to the direction of the verdict in plaintiff's favor, or to the action of the court in not submitting the case to the jury for its determination of the facts.

Since, however, in this case each side moved the court for peremptory instructions in its favor, unaccompanied by requests for specific instructions in case the request for a directed verdict should be denied, this amounted to an admission by each side that there was no conflict in the evidence and no question presented for the jury, and to a request to the court to find the facts and direct the verdict accordingly. Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654; United States v. Bishop (C. C. A. 8) 125 Fed. 181, 183, 60 C. C. A. 123; Anderson v. Messenger (C. C. A. 6) 158 Fed. 250, 253, 85 C. C. A. 468; American Nat'l Bank v. Miller (C. C. A. 6) 185 Fed. 338, 341. And when, pursuant to such requests, the court accepted these waivers, and by its peremptory instructions determined the questions of fact and law in favor of one of the parties, each is estopped from assailing its finding upon disputed issues of fact, and is limited in the appellate court to a review of the question whether there was any substantial evidence not inconsistent with the undisputed evidence in the case, upon which to support the verdict as directed, under the issues of fact and law presented by the pleadings. United States v. Bishop, supra, 125 Fed. at page 183, 60 C. C. A. 123; American Nat'l Bank v. Miller, supra, 185 Fed. at page 342.

Obviously, therefore, the assignment of errors relating to the action of the trial court in not submitting the case to the jury for its determination of the facts, must be overruled. And since the question whether the trial court was in error in overruling the defendants' motion for peremptory instructions, to which exception was duly reserved, necessarily involves the same question as that in reference to its action in granting peremptory instructions in favor of the

plaintiff, the two matters being correlative, we proceed to the consideration of the fundamental question involved under this review, namely; whether there is substantial evidence in the record not inconsistent with the undisputed evidence in the case upon which to support the verdict as directed, under the issues presented by the pleadings.

The amended petition which, under order of the court, was filed as a substitute for the original petition as previously amended, alleged that on April 23, 1906, the defendants with one G. C. Scudamore by their note of said date, filed with the petition, promised to pay to the order of said Scudamore on or before May 15, 1908, the sum of $5,467.50, with interest from May 15, 1906, payable at the First National Bank of Sebree, a corporation under the National Banking Act; that after the execution and delivery of said note, before its maturity and for value, the said Scudamore endorsed and delivered the same to the plaintiff; and that the plaintiff was then the owner and holder thereof.

The answers admitted that the defendants had signed this note with Scudamore, but denied that at the time of signing and delivery there was any payee named in the note or that it was payable at the First National Bank of Sebree, or that Scudamore before its maturity, had, for value, endorsed or delivered the same to the plaintiff, or that the plaintiff was the owner or holder of this note; and further averred that this note was signed and delivered by them to Scudamore for the purpose of being used by him for borrowing money from some bank in Nashville, Tennessee, with which to buy land for them in Florida; that the notes were signed and delivered to Scudamore with the name of the payee left blank, with the understanding that this blank should be filled in by the name of the bank lending the money for the purchase of the land which was the sole consideration for the execution of the note; that Scudamore did not purchase the land in Florida or borrow any money on the note for the defendants, and they never received any consideration therefor; that when Scudamore failed to discount the note for the purpose for which it was given he fraudulently and without defendants' knowledge inserted his own name as payee thereof and negotiated a loan for himself from the American National Bank of Nashville, Tennessee, and to secure such loan fraudulently hypothecated the note in suit as collateral security and endorsed the same without the knowledge or consent of the defendants; that this was the only endorsement which Scudamore ever made upon the notes and was made for this sole purpose; that thereafter said Scudamore paid his loan to said American National Bank and the note in suit which had been deposited by him as collateral was returned to him by said bank; that Scudamore had never delivered this note to the plaintiff and it had never owned said note or had it in its possession or any right, title or interest therein, and that if it had been delivered by Scudamore to the plaintiff it was delivered after its maturity, and only with the endorsement that he had originally made to the American National

Bank; and that it was at the date of such delivery a non-negotiable note subject to all defenses allowable against such note.

The plaintiff filed replies in the nature of a general denial of the matters in confession and avoidance relied on in the answers. The plaintiff subsequently filed a pleading entitled an "Amended Petition," in which "amending the petition to conform to the proof" it alleged that Scudamore (who is shown by the proof to have been the cashier of the plaintiff at the time of these transactions) had discharged his obligation to the American National Bank for which the note in suit had been deposited as collateral by his individual check drawn on the plaintiff, and that while he then had no funds to his credit with the plaintiff and the plaintiff was not indebted to him in any sum, had, without the knowledge and consent of the plaintiff, paid his said individual check to the American National Bank with the funds of the plaintiff and thereby discharged his obligation to the American National Bank and obtained the surrender of the note in suit deposited with it as collateral. This "Amended Petition" concludes: "Wherefore plaintiff prays as in the petition as amended." The answer of the defendants to this "Amended Petition" was in the nature of a general denial.

The material evidence introduced at the trial, so far as the same need be recited, was substantially as follows:

The original note, which was filed with the plaintiff's petition, was produced at the trial and exhibited in evidence. It has, by agreement, been sent up as a part of the record, and shows on its face that it was executed on a printed blank designating the Peoples' Bank of Sebree as the place of payment, but that the name "Peoples' Bank" has been erased by drawing an ink line through it and the name "First National Bank" inserted in lieu thereof, with a stamp. It was further shown by officers and employees of the American National Bank that this note was deposited with said bank as collateral by Scudamore on April 26, 1906, to secure a loan then made Scudamore by said bank; that this loan was finally paid by Scudamore on August 14, 1907, by check drawn on the plaintiff, the note in suit which had been deposited by him as collateral being then returned to him by the American National Bank.

There was also evidence, though of a somewhat indefinite character, as to the pledging by Scudamore to the plaintiff as security for loans made to him, of the defendants' note in suit before its maturity, with the other $5,000.00 note of the defendants originally sued on.

J. B. Perkins, who was plaintiff's cashier up to August 1, 1907, but who then resigned, returning as cashier about Thanksgiving, 1907, proved the execution by Scudamore of two notes to the plaintiff, one dated June 28, 1907, for $6,300.00 due ninety days after date, and the other dated November 2, 1907, for $5,500.00 due sixty days after date, and testified that Scudamore executed these notes for money which he borrowed from the plaintiff, and stated that he gave these notes "as collateral with" the "notes of R. E. Melton and others sued on in this case." He further states that he did not see the $5,-000.00 collateral note at the time the bank took it, and first saw it in January, 1908.

George P. Wentworth, a director and member of the finance committee of the plaintiff, in answer to a request to state all the officers and representatives of the plaintiff who took part in the transaction with Scudamore at the time the defendants' two notes were pledged with the plaintiff as collateral security, stated that O. L. Bass, the president, and several other directors were present at the time these notes were pledged as surety; that Scudamore kept the records of the directors' meeting and they do not disclose the particular date on which the loan was acted on; that he had no knowledge that the name of the Peoples' Bank had been changed to the First National Bank in the note in suit, and first learned of the claim that there had been a change in the note when his attention was directed to it by a representative of the plaintiff after he had received a letter from one of the defendants, probably four or five months after they had taken the note as collateral.

O. L. Bass, president of the plaintiff, in answer to a similar question, stated that he took the notes and submitted them to a meeting of the directors of the plaintiff, but could not remember which directors were present on that afternoon; that he had no knowledge of the fact that the name of the Peoples' Bank had been changed to the First National Bank, that if any of the officers present at the time had such knowledge they did not make it known, and that he first learned of the claim that there had been a change some time during November, 1907.

It further appeared that at the time of the trial Scudamore had been adjudged insane and was then confined in the State Hospital for the Insane.

The several defendants, all of whom except J. H. Sharp, testified in their own behalf, stated that at the time they signed and delivered the note in suit to Scudamore it was payable at the Peoples' Bank of Sebree, and that the place of payment was thereafter changed without their knowledge and consent to the First National Bank of Sebree, and further that at the time the note was executed and delivered to Scudamore his name did not appear on it as payee. On their cross-examination, however, it was shown that the Peoples' Bank of Sebree had been a State bank; that it was changed from a State bank to a national bank, under the name of the First National Bank of Sebree, in 1904, about two years before the execution of this note, and that the First National Bank had continued in business with the same directors, the same officers and the same stockholders as the Peoples' Bank and did business in the same building in the town of Sebree. the name "Peoples' Bank" being still carved on the stone step of the First National Bank.

J. B. Ramsey, one of the defendants, and president of the First National Bank, testified that he and every one of the defendants knew at the time they signed the note where the Peoples' Bank of Sebree was or had been, knew it had gone out of business and been changed to the First National Bank, and that when the note was drawn on the old form of stationery and made payable at the Peoples' Bank he

knew what place was intended and was not misled by the change in the place of payment or deceived in any way.

The other defendants who testified also admitted in substance that they knew that the Peoples' Bank had been changed to the First National Bank and that the First National Bank was occupying the same building in which the Peoples' Bank had done business.

Under the foregoing testimony we are of opinion that there was substantial evidence sustaining the conclusion reached by the trial court in directing the verdict in favor of the plaintiff on the note in suit, and that this conclusion was not in conflict with any of the undisputed evidence in the case, for the following reasons:

[2] (1) The defendants having by their answer admitted the fact that Scudamore had signed his name as endorser of the note at the time he delivered it to the First National Bank proof of the fact of the endorsement which would otherwise have been indispensable (Collins v. Gilbert, 94 U. S. 753, 754, 24 L. Ed. 170), was thereby waived. See Mills v. United States Bank, 11 Wheat. 431, 439, 6 L. Ed. 512, Birket v. Elward, 68 Kan. 295, 74 Pac. 1100, 64 L. R. A. 568, 104 Am. St. Rep. 405, and New Haven Mfg. Co. v. Pulp & Board Co., 76 Conn. 126, 55 Atl. 604. [3] Therefore proof of the fact of endorsement not being required under the pleadings, the fact that the note was in the possession of the plaintiff, exhibited with its petition and offered in evidence, made out a prima facie case that the plaintiff had become its holder for value before maturity in the usual course of business, and without notice of anything to impeach its title. Goodman v. Simonds, 20 How. 343, 15 L. Ed. 934; Collins v. Gilbert, 94 U. S. 753, 754, 24 L. Ed. 170; Hays v. Hathorn, 74 N. Y. 486, 491; McCarty v. Louisville Banking Co., 100 Ky. 4, 11, 37 S. W. 144; Hargis v. Louisville Trust Co., 30 S. W. 877, 17 Ky. Law Rep. 218, 219. Furthermore, while the evidence as to the actual pledging of this note by Scudamore to the plaintiff is meagre in detail and vague as to dates, we think that on the whole there is substantial evidence that the note in suit was in fact pledged as security for his note or notes, at some time prior to the maturity of the note in suit; and that, there being no evidence in the record either of want of consideration for the note, or of notice to the plaintiff thereof or of other defenses, the plaintiff must be held to have made out its case, not only prima facie, but under the greater weight of the evidence, as a holder of the note for value in due course of trade, before maturity, without notice of equities or defenses.

[4] As the proof shows that the note in suit was pledged to the plaintiff before its maturity, it is immaterial whether it was transferred as collateral to either of the Scudamore notes at the time the loan to him was made, or afterwards to secure his pre-existing indebtedness. The rule is well settled in the Federal Courts that the transfer of a negotiable paper by endorsement, before maturity, as security for an antecedent debt, is a transfer for value in due course of business. Railroad Co. v. National Bank, 102 U. S. 14, 23, 26 L. Ed. 61; American File Co. v. Garrett, 110 U. S. 288, 294, 4 Sup. Ct. 90, 28 L. Ed. 149; Hamilton v. Fowler (C. C. A. 6) 99 Fed. 18, 22,

40 C. C. A. 47; Scherer v. Everest (C. C. A. 8) 168 Fed. 822, 831, 94 C. C. A. 346; Doe v. Coal & Transportation Co. (C. C.) 78 Fed. 62, 68; D'Esterre v. City of Brooklyn (C. C.) 90 Fed. 586, 593. And see Swift v. Tyson, 16 Pet. 1, 15, 10 L. Ed. 865; Townsley v. Sumrall, 2 Pet. 170, 182, 7 L. Ed. 386; McCarty v. Roots, 21 How. 432, 438, 16 L. Ed. 162; Sawyer v. Prickett, 19 Wall. 156, 166, 22 L. Ed. 105; Oates v. National Bank, 100 U. S. 239, 247, 25 L. Ed. 580. This is also the rule in the greater number of the States and in England. See cases collected in 7 Cyc. 932; 4 Am. & Eng. Enc. Law (2d Ed.) 290; and 1 Am. & Eng. Ann. Cas., p. 275, note. And recently the Supreme Court of Arkansas in Exchange Nat. Bank v. Coe, 94 Ark. 387, 127 S. W. 453, 31 L. R. A. (N. S.) 287, recognizing that the trend of modern decisions is in favor of the rule adopted in the Federal Courts as tending to promote uniformity in the several jurisdictions, has expressly adopted this rule and overruled dicta to the contrary in two earlier Arkansas cases.

And while it was formerly held by the Court of Appeals of Kentucky in Lee's Adm'r v. Smead, 1 Metc. (Ky.) 628, 71 Am. Dec. 494, that the taker of collateral for an antecedent debt without a new consideration did not become a holder for value in due course, not only is such holding on a question of general commercial law not binding on the Federal Courts (Swift v. Tyson, 16 Pet. 1, 15, 10 L. Ed. 865; Railroad Co. v. National Bank, 102 U. S. 14, 23, 26 L. Ed. 61), but the former law of Kentucky in this respect was changed by the enactment, in 1904, of a uniform Negotiable Instruments Act (Kentucky Acts 1904, c. 102, p. 213, Carroll's Kentucky Statutes 1909, § 3720b [Russell's St. §§ 1885, 1886]). which provides as follows:

Sec. 25. "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes a value, and is deemed such whether the instrument is payable on demand or at a future time."

Sec. 26. "Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

It is clear that under these sections of the Act one who takes a note before maturity as collateral security for a pre-existing debt is a holder for value. In re Hoppner-Morgan Co. (D. C.) 154 Fed. 249, 253; Trust Co. v. Markee (C. C.) 179 Fed. 764. And in recent cases in States in which the Federal rule had not been previously followed, it is now recognized that by reason of the adoption of uniform negotiable instruments acts similar to that adopted in Kentucky, the assignee of a negotiable instrument taking the same before maturity as collateral security for a pre-existing debt is now to be regarded as a holder for value to the extent of the debt secured. Brooks v. Sullivan, 129 N. C. 190, 39 S. E. 822; Payne v. Zell, 98 Va. 294, 297, 36 S. E. 379. And see Bank v. Johnston, 105 Tenn. 521, 530, 59 S. W. 131.

[5] It is also well settled that a bona fide holder of a negotiable instrument who, for a valuable consideration, without notice of facts which impeach its validity between antecedent parties, takes it by indorsement made before its maturity, holds the title unaffected by

these facts and may recover thereon, although as between the antecedent parties the transaction may be without legal validity. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Goodman v. Simonds, supra, 20 How. at page 367, 50 L. Ed. 934; Railroad Co. v. National Bank, supra, 102 U. S. at page 23, 26 L. Ed. 61; Hamilton v. Fowler (C. C. A. 6) 99 Fed. 18, 22, 40 C. C. A. 47; First National Bank v. Moore (C. C. A. 9) 148 Fed. 953, 78 C. C. A. 581.

And the Kentucky Negotiable Instruments Act, supra, provides to the same effect, as follows:

Sec. 52. "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face. (2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. (3) That he took it in good faith and for value. (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Sec. 57. "A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

[6] Furthermore, the pledgee of a note held as collateral being a bona fide holder for value, may maintain an action at law thereon in his own name. See McCarty v. Roots, supra; Railroad Co. v. National Bank, supra. And section 51 of the Kentucky Negotiable Instruments Act, supra, specifically provides that:

"The holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument."

[7] (2) The fact that the name of the bank at which the note was payable was changed after execution from the Peoples' Bank to First National Bank, without the knowledge or consent of the defendants, does not, in our opinion, constitute a defense to the note. It is true that where no place of payment is designated in the note the subsequent insertion of a place of payment is a material alteration as against all parties not consenting thereto (2 Daniel Negot. Inst. [3d Ed.] § 1378; Whiteside v. Northern Bank of Kentucky, 10 Bush [Ky.] 501, 19 Am. Rep. 74), and that a change in the place of payment contained in a note as originally executed is a material alteration (Mitchell v. Reed, 106 S. W. 833, 32 Ky. Law Rep. 683). However, we cannot regard the change made in this case as amounting either to a change in the place of payment or the insertion of a place of payment where none had been originally specified. Under the note as originally written the place of payment was the Peoples' Bank of Sebree. This bank, as was known to most, if not all, of the makers, was a State bank, which had gone out of business as a State bank under that name about two years before, and had become the First National Bank of Sebree, which continued to do business as a national bank with the same officers, directors and stockholders as the former Peoples' Bank; and did business in the same banking house, with the old name of Peoples' Bank carved on its step. We are of opinion that, under these circumstances, the designation of the place of payment as the Peoples' Bank was equivalent to a designation of the First

National Bank as the place of payment, and that it must have been so intended by all the signers of the note; that, under the circumstances, even if the name had not been changed the note would have still been payable at the banking house of the First National Bank, the former place of business of the Peoples' Bank, and that as the change in the place of payment merely served to give a more technically accurate description of the same place of payment it cannot be held to be a material alteration. Thus in Metropolitan Bank v. Claggett, 141 U. S. 520, 527, 12 Sup. Ct. 60, 35 L. Ed. 841, it was held that the conversion of a State bank in New York to a national bank did not destroy its identity or corporate existence; that it simply resulted in a continuation of the same body with the same officers and stockholders, the same property, assets and banking business under a changed jurisdiction; that it remained one and the same bank and went on doing business uninterruptedly; and that it was not thereby discharged from its liability as a national bank on its outstanding circulation issued in accordance with the state law.

[8] (3) The fact that the name of the payee was blank at the time the note was signed by the defendants and delivered to Scudamore does not impeach its validity in the hands of the plaintiff. An implied authority was thereby given to Scudamore to fill in the name of the payee, and even if he filled it in with the wrong name, in violation of his agreement with the defendants (as to which there is no evidence in the record) this would not affect the title of the plaintiff, taking the note as holder for value before maturity, without notice. See, by analogy, in the case of filling in a blank date, Goodman v. Simonds, supra, 20 How. at page 361, 15 L. Ed. 934, and Androscoggin Bank v. Kimball, 10 Cush. (Mass.) 373, and other cases there cited as to the general authority given to fill up blanks, by signing and delivering to an agent of an instrument in which blanks are left.

[9] (4) The fact that Scudamore's name appears both as a maker and payee on the note does not destroy its validity as a negotiable instrument.

It is true that in Logan County Nat. Bank v. Barclay, 104 Ky. 97, 46 S. W. 675, 20 Ky. Law Rep. 773, it was held that the assignment of a note of two obligors to a firm of which one of them was a member operated to extinguish the debt as to the obligor who thus became both obligor and obligee, and hence released the other obligor from liability on the note; and that in Deavenport v. Deposit Bank, 138 Ky. 352, 128 S. W. 88, 137 Am. St. Rep. 386, it was held that where a firm note comes into the hands of an individual member by assignment this does not pass title but operates as an extinguishment of the note itself, although he may in such case enforce contribution by the other members of the firm.

However, section 8 of the Kentucky Negotiable Instruments Act, supra, specifically provides that a negotiable instrument may be drawn payable to the order of a payee who is its drawer or maker. Under this express provision of the Act, the character of the note in suit as a negotiable instrument, and its validity as between the plaintiff and

defendants is not affected by the fact that Scudamore, the payee, is also one of the makers.

[10] (5) We are furthermore of opinion that the filing of the last "Amended Petition" did not, as is earnestly insisted in behalf of the defendants, serve as an abandonment of the original cause of action, in which the plaintiff sought to recover as the legal holder of the note, and as a substitution of a merely equitable claim for recovery based upon the theory of subrogation through the misapplication by Scudamore of its funds to the payment of his obligation to the American National Bank for the security of which this note was held as collateral. While this pleading is inartificially framed and is improperly styled an amended petition instead of an amendment to the petition, yet, considering it as a whole, we are of opinion that it was not intended to set up the facts upon which the doctrine of subrogation could be based as a substitute for the original cause of action, but to state merely an additional or alternative cause of action resting upon the theory of subrogation. While we might have had some doubt on this question as an original proposition, we think it clear from the entire record that the pleadings were thus construed by all parties in the court below, and that neither that court nor any of the parties treated the case in the court below as resting solely upon the doctrine of subrogation, but on the contrary treated it as based primarily on the right of the plaintiff to recover as pledgee of the note in question. This was obviously the theory upon which the peremptory instructions were given by the court in the plaintiff's favor, as is clearly shown by the opinion filed by the court on the motion for new trial. Furthermore the objection which the defendant now seeks to raise that under this last "Amended Petition" the sole cause of action presented is one of an equitable nature based upon the doctrine of subrogation does not appear to have been made in the court below or in any manner called to the attention of the court. This objection does not appear among the grounds assigned for a new trial; nor does it specifically appear among any of the thirty-two grounds of error assigned in this court. On the other hand the plaintiff has in this court expressly disclaimed any right of recovery on the theory of subrogation, and rests its case solely upon its right as pledgee of the note. Therefore in this state of the record and without any assignment of error specifically raising this question, we deem it unnecessary to consider the question whether if the plaintiff was seeking a recovery upon the theory of subrogation any right so founded could be maintained in an action at law; but without consideration of this question rest our judgment upon the fact that under a fair construction of the pleadings and upon the theory upon which this case was evidently treated in the court below, it is to be considered in its first and essential aspect as an action at law based upon the plaintiff's legal title to the note obtained through endorsement and delivery by Scudamore. See Third Nat. Bank v. Nat. Bank (C. C. A. 5) 86 Fed. 852, 30 C. C. A. 436; Louisville & N. Ry. Co. v. Womack, 173 Fed. 753, 97 C. C. A. 559, and Chicago, R. I. & P. R. Co. v. Barrett, 190 Fed. 118, this day decided by this court.

On the whole, therefore, we conclude that under the pleadings and

proof, there was material evidence, not inconsistent with any undisputed evidence in the case, to support the action of the trial court in overruling the defendants' motion for peremptory instructions and in directing a verdict in plaintiff's favor, and therefore without determining whether the defendants would, but for their exception to the action of the trial court in overruling their motion be in a position, under the doctrine of Rodriguez v. United States, 198 U. S. 156, 165, 25 Sup. Ct. 617, 49 L. Ed. 994, to now question by assignment of error the direction of the verdict against them, conclude that, upon the merits, the several assignments of error relating to these matters should be overruled.

Second. There is also an assignment of error that the court below erred in refusing to allow the defendants "to show that they, nor any of them, ever received any consideration for the note sued on, and in refusing to allow them to prove, which they offered to do, that they never received any consideration for said note and in refusing to allow them to prove the exact transaction."

The briefs filed in this court in behalf of the defendants do not identify the evidence there alleged to have been offered and excluded, by reference either to the names of the witnesses or pages of the record, although rule 24 of this court requires that the brief for the plaintiff in error shall contain a "brief of the argument, exhibiting a clear statement of the points of law or fact to be discussed, with a reference to the pages of the record, and the authorities relied upon in support of each point (150 Fed. xciii, 79 C. C. A. xciii). However, on examining the record we find that the defendant, J. B. Ramsey, was asked various questions evidently relating to this matter, to which objections by the plaintiff were sustained, and exception reserved by the defendants, and that counsel for the defendants thereupon "avowed that if the witness had been permitted to answer, he would have stated that they received no part of the consideration of said notes; that the notes were executed to raise money to purchase land in Florida; that Scudamore said he would take the notes. and negotiate them and get the money on them at a bank in Nashville, Tennessee; and that he wrote them back that he had failed to get the money, and that he had destroyed the notes, and that they would have to get money from other people, and that they did, and paid for the land, and received no part of the consideration for those notes."

[11] Upon consideration of this avowal we are of opinion that no error appears in the exclusion of the testimony for two reasons: 1st, the defendants did not allege in their answer that the plaintiff had taken the note in suit with notice of the alleged want of consideration; and 2nd, the defendants did not otherwise show or offer to show by this avowal that the plaintiff had notice of the alleged want of consideration at the time it received the note as pledgee. This however was clearly essential to constitute a defense upon the note, and obviously even if the fact of notice was provable under the pleadings, the fact that Scudamore had knowledge of the alleged want of consideration would not be chargeable to the plaintiff even although he was its cashier at the time, since, in the matter of pledging these

ncites to the plaintiff he was not acting in its behalf but was dealing at arm's length with the plaintiff and acting solely in his own interest. American Nat. Bank v. Miller, supra, 185 Fed. at page 343. The case here presented is obviously entirely different from that in Childers v. Billiter, 144 Ky. 53, 137 S. W. 795, in which the person who made the purchase of the note with knowledge of its infirmity was acting as the agent of the purchaser in the transaction.

. Third. There are also numerous assignments of error relating to the action of the trial court in the admission of testimony. So far as the same require consideration they relate entirely to the admission of the evidence in reference to the change of the Peoples' Bank to the First National Bank, and the knowledge of that fact and of the attending circumstances which was possessed by the defendants at the time they signed the note in suit. This evidence related, in our opinion, to a matter which was obviously material under the issues in the case and was correctly admitted by the trial court. The assignments of error relating to this matter are without merit.

Fourth. Without stating in detail various other assignments of error, many of which are repetitions in various forms of the assignments of error already considered, or subdivisions thereof, it is sufficient to say that on a careful examination we find that they present no material questions which are not embraced in the consideration given to the assignments of error heretofore mentioned.

. We find no prejudicial error in the record; and the judgment of the Circuit Court will accordingly be affirmed.